STATE *v.* JOSEPH RIVERS.

November Term, 1909.

Present: ROWELL, C J., MUNSON, WATSON HASELTON, AND POWERS JJ,.

Opinion filed, January 16, 1911.

*Criminal Law—Trial—Argument of Counsel—Kidnapping— Elements of the Offence Under P. S. 5721—"Inveigle"— Evidence—Instructions—Definitions of Terms—Reading from Dictionary—Instructions—Exceptions—Sufficiency — Harmless Error.*

Counsel in argument to the jury may properly comment on the bias of a witness as revealed by her appearance on the stand.

To warrant a conviction under P. S. 5721, punishing a person who forcibly seizes, confines, inveigles, or kidnaps another under the age of sixteen years, with the intent to cause him secretly to be sent out of this State against his will, it is not necessary to show that the respondent used actual force on the person of the prosecutrix, and thus caused her to be sent out of this State.

In a prosecution for kidnapping a girl under the age of sixteen years, in violation of P. S. 5721, where the court instructed the jury that the moral force used by the respondent must have been of such a character that the girl would not have left the State but for its exercise, and that there must have been a moral influence exercised on her mind that induced her to go, it was not error to refuse further to charge that the State must show that the respondent used such moral force as created a willingness on the girl's part to leave the State.

In a prosecution for kidnapping a girl under the age of sixteen years, in violation of P. S. 5721, where there was no claim of actual force used by respondent, the size of the girl was immaterial.

The failure to give a requested instruction that is not wholly sound is not error.

The word "inveigle" as used in P. S. 5721, punishing one who forcibly seizes, inveigles, or kidnaps another, is used in its ordinary sense and involves the idea of deception for the accomplishment of an evil purpose.

The practice of the court, in its charge, of reading from a dictionary the definitions of a word is not to be commended.

In a prosecution under P. S. 5721, punishing a person who forcibly seizes, confines, inveigles or kidnaps another under the age of sixteen years, an instruction defining the word "inveigle" as "to lead astray by making blind to the truth or consequences, to mislead by deception, enticing into a violation of duty, propriety, or self-interest, to blind, to delude, to lead astray, to persuade to something evil **by** deception, to entice, to ensnare, to seduce, to wheedle", is not misleading.

An exception to the instruction that the word "inveigle" means to entice into a violation of duty, propriety, or self-interest, and to so much of the definition as states that "inveigle" means "to blind, to delude", is not an exception to the court's failure to give a definition of its own instead of reading the definition from standard dictionaries.

It is not error to refuse a requested instruction where it appears that the charge as given sufficiently covers the point.

On trial for kidnapping a girl under the age of sixteen years, in violation of P. S. 5721, where the case as submitted to the jury left no room for the jury to suppose that the relations between the respondent and his wife, and his going away from her, and the fact that he neglected his duty to his family and ran about the streets with the girl, were sufficient to establish any element of the offence, the omission to charge that those facts were immaterial could not have harmed the respondent.

Respondent's exceptions to the court's failure to charge that the question was not whether respondent caused the girl to go to any particular place in Canada, but whether he inveigled her at her home, and that this meant something more than "causing" as argued by the State's attorney, and to the court's failure to correct the State's attorney's argument that the law should be such as to punish respondent because he interfered with the mother's custody of her child, are insufficient to reserve for review the propriety of the argument, nothing more thereof being revealed by the record.

INFORMATION for kidnapping a child under the age of sixteen years, in violation of P. S. 5721. Plea, not guilty. Trial by jury at the June Term, 1909, Windsor County, *Hall,* J., presiding. Verdict, guilty, and judgment thereon. The respondent excepted. The opinion states the case.

*Gilbert A. Davis* for the respondent.

*Edward R. Buck,* State's Attorney, for the State.

MUNSON, J.   Section 5721 of the Public Statutes provides for the punishment of one who "forcibly seizes or confines or inveigles or kidnaps another person with intent to cause him to be secretly confined or imprisoned in this State against his will, or to cause him to be sent out of this State against his will, or in any way  held to service against his will," and provides an increased penalty for one who commits the offence "upon a person under the age of sixteen years, with or without the consent of such person."

The information charges in substance that the respondent, with force and arms, did wickedly and feloniously entice, inveigle and kidnap one Daisy Redmond, a female child of the age of fifteen years, with the intent to cause her to be sent out of the State against her will, and that he did cause her to be sent out of the State against her will.

The remarks made in argument by the State's attorney regarding the bias of the witness Daisy were based upon her appearance on the stand, and were proper argument.

The court was requested to charge that in order to warrant a conviction it must be shown that the respondent used actual force upon the person of Daisy, and thus caused her to go out of the State.   The request was properly disregarded.

The court was also requested to charge that the State must show that the respondent used such moral force as created a willingness on Daisy's part to leave Windsor and go to Canada, and that without the exercise of such moral force she would not have done so.   The court charged in substance that the moral force exercised must have been of such a character that she would not have gone from Windsor to Canada but for its exercise; that there must have been a moral influence exercised upon the mind of the child that induced her to go.   This was a substantial compliance with the request.

There was a further request for an instruction that the jury should consider the size and physical and mental characteristics of Daisy in determining whether she went from Windsor to Montreal voluntarily.   As the case did not stand upon the claim of actual force, the size of the girl was not a material consideration, and the request not being wholly sound, the failure to comply with it was not error.

The case was submitted as standing upon the word "inveigle". The court read to the jury the definitions of "inveigle" as given in standard dictionaries, but gave no definition of its own. In futher explanation of its meaning, the court said that the respondent's counsel had used in his argument the words "influencing, inducing, enticing, persuading," and that the question was whether the respondent had inveigled the girl out of the State, "under the definition, if you please, given by Mr. Davis." No exception was taken to this reference to the words used by counsel.

The definitions read by the court were as follows: (1) "To lead astray by making blind to the truth or consequences; to mislead by deception; enticing into a violation of duty, propriety or self-interest." (2) "To blind, to delude, to lead astray, to persuade to something evil by deception, arts or flattery; to entice, to ensnare, to seduce, to wheedle." The respondent excepted to the definition of "inveigle"—that it means to entice into a violation of duty, propriety or self-interest; also to so much of the definition as stated that "inveigle" meant "to blind, to delude;" also, to the omission to add to the definition, "with intent to lead or induce Daisy Redmond to leave the State against her will."

The word "inveigle," in its ordinary acceptation, carries the idea of deception for the accomplishment of an evil purpose, and this is undoubtedly the meaning of the word as used in the statute. The practice of reading to the jury the various definitions of a word given in dictionaries is not to be commended, but the exceptions taken are not directed to this feature of the instruction. No exception was taken to the failure of the court to give a definition of its own. Counsel made two or three of the terms used the subject of exception, while others of more remote application were left unchallenged. Words given as synonyms may have different meanings as used in different connections. It may be true that some of the terms used here are capable of meanings inconsistent with the force of "inveigle" as used in the statute. It would seem that in such a case, and as against the exceptions presented here, the words should be taken in the sense consistent with the dominant and more explicit terms employed. It is clear that the jury cannot have

been misled or confused by the terms "to blind, to delude", or "enticing", when used with reference to the matter being submitted, and in connection with the expressions "to mislead by deception", "to persuade to something evil by deception". The views now urged upon the Court would require a reversal of the case for a treatment of the matter by the court that was directly in line with the course followed by the respondent's counsel in argument. These are the views of a majority. The writer of the opinion questions the propriety of this disposition of the exception.

It was not error to omit to add to the definition the words "with intent to lead or induce Daisy Redmond to leave the State against her will." All that the respondent was entitled to in this respect was covered by other parts of the charge.

Exceptions were taken to the omission to charge that the relations between the respondent and his wife, and his going away from her, and the fact that he was a married man and neglected his duty to his family, and was running about the streets with the girl Daisy, were wholly immaterial. The manner in which the case was submitted left no room for the jury to suppose that these facts were sufficient to establish any element of the offence.

Exceptions were also taken to the omission to charge that the question was not whether the respondent caused Daisy to go to any particular place in Canada, but whether he inveigled her in Windsor, and that this meant something more than "causing" as argued by the State's attorney; and to the omission to correct that part of the State's attorney's argument where he claimed that the law should be such as to punish the respondent because he interfered with the mother's custody of her child. This is all that we have regarding the State's attorney's argument, and it is not sufficient to entitle the exceptions to consideration.

*Judgment that there is no error and that the respondent take nothing by his exceptions.*

ROWELL, C. J., and MUNSON, J. dissent.

ROWELL, C. J., dissenting.   Some of the terms used in the charge being capable, as the Court says, of meanings inconsistent with the force of *inveigle* as used in the statute, it is not enough for the Court to say that it is clear the jury could not have been misled nor confused by those terms, without going further and putting its finger on that which makes it clear, which it does not do, but reaches its conclusion by argument that is little better than conjecture, because of the inconclusiveness of the ground on which it rests.   The Court does not know, and cannot know, that the jury did not adopt for their guidance the meaning of some of the inconsistent terms, and therefore it does not *appear* that the error was harmless.   I would reverse.