### State of Vermont v. Frederick J. Angelucci

[405 A.2d 33]

No. 7-78

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed May 22, 1979

Motion for Reargument Denied June 19, 1979

*Gregory W. McNaughton,* Washington County State's Attorney, Montpelier, for Plaintiff.

*James L. Morse,* Defender General, *Charles S. Martin* and *William A. Nelson,* Appellate Defenders, *David W. Curtis,* Acting Appellate Defender, and On the Brief, *Andrew Crane,* Washington County Public Defender, *John Franco* and *Jack Sahl,* Law Clerks, Montpelier, for Defendant.

**Barney, C.J.** The defendant was charged and convicted of burglary in the nighttime and grand larceny after trial by jury. He was also charged under the habitual offender statute, 13 V.S.A. § 11. This issue was presented to the jury and resulted in conviction after completion of the original felony

trial. As a consequence of the granting of a motion for a change of venue, this Washington County proceeding was ultimately tried in Windsor Superior Court.

The criminal charges arose from a break-in at the office building of State Highway District No. 6 on Route 302 between Barre and Montpelier. By happenstance, this defendant was already under surveillance. As a result the defendant's car was observed turning off Route 302 in the vicinity of the office building at about 11:30 p.m. on June 9, 1977. Law officers located the empty car and watched it. After about half an hour someone came out of the bushes, got into the car and drove away. A check of the unlit side of the office building revealed a window had been broken and several pieces of office equipment were outside on the ground, covered by a piece of plastic to protect them from intermittent rain. Officers took concealed position near the equipment. While they were there, other officers observed the defendant making many trips back and forth on the highway next to the office building. Finally the vehicle turned in, put its lights out and pulled up to the pile of equipment. The defendant got out, covered the registration plate with a towel and loaded the equipment into the trunk. He was then arrested.

The appeal raises a number of issues.

The defendant raised the issue of speedy trial and moved for dismissal of the charges against him. He now asserts the denial of that motion was error. His original arraignment took place in district court on June 10, 1977. On August 8, 1977, the cause was transferred to superior court where defendant was rearraigned. At all relevant times the defendant was confined, being unable to furnish bail. On September 8, 1977, the omnibus hearing was had with various motions, including the motion for change of venue and the motion to dismiss for want of speedy trial, considered.

In its findings on the speedy trial issue the trial court reported, and it is undisputed, that the State pressed for an earlier hearing at the arraignment when the omnibus hearing was set for September 8. The defendant neither opposed nor joined the State's request. There were apparently some calendaring obstacles in the superior court that interfered with an earlier hearing.

■ The State quite correctly points out that the 129 day period from arraignment before the district court to trial before superior court involved 45 days of pretrial proceedings. This, the State says, makes the true measure of delay only 84 days. The defendant argues that a close reading of Administrative Order No. 5, 12 V.S.A. App. VIII, required the State to seek a postponement under section two of that order to avoid dismissal.

It is clear from the facts that this case does not reach the level of *State* v. *Franklin,* 136 Vt. 568, 396 A.2d 138 (1978), where this Court found the right to a speedy trial violated as a matter of law after an eighteen month delay in going to trial not brought about by the defendant. The governing doctrine for the circumstances in this case are found in *State* v. *Chamberlin,* 131 Vt. 549, 551, 310 A.2d 30 (1973). Unlike that case, this defendant was in confinement recognized in § 2 of Administrative Order No. 5 by a shortening of the time schedule for criminal trials. However, as *Chamberlin* states, the implementation of this order is a discretionary matter for the trial court, and is not invocable as a matter of right by a defendant. Here there was a hearing held and findings made, including one determining that no prejudice had been established. The trial court's discretion was invoked, and properly exercised. No error can be based on this ruling.

The defendant objected to the evidence in the case indicating that he was under surveillance prior to any criminal activity with which he was charged in this case. His contention was that such evidence was prejudicial to the point of outweighing its relevance. The objection was made at the opening of the trial after empanelling of the jury, and the trial court denied the request for exclusion.

■ The issue involves a balancing of concerns between relevance and prejudice. Prejudicial effect may overwhelm relevance and render otherwise proper evidence inadmissible. *State* v. *Beyor,* 129 Vt. 472, 473, 282 A.2d 819 (1971). However, it must be understood that criminal activity cannot go unprosecuted because elements relevant to its establishment are simultaneously prejudicial from some other point of view unrelated to the crime. Thus there comes a point of relevance that cannot be overcome because of some prejudicial effect.

The question is always one of balancing interests. See *State* v. *Davis*, 132 Vt. 290, 293, 318 A.2d 664 (1974).

■ Since the evidence of criminal activity derived from the eyewitness accounts of those involved in the surveillance, its relevance was of the highest order. The testimony confined itself to the fact of observation only during a period of time relevant to the crime charged. Any purposes that may have existed for initiating the surveillance were left unstated and entirely without inferential suggestion. The ruling below must be affirmed.

At the close of the State's case the defendant moved for a judgment of acquittal as to both the charge of burglary in the nighttime and grand larceny. The trial court denied the motions. The defendant introduced no evidence, and the case went to the jury.

■■ The crime of burglary involves a breaking. Unless the evidence is sufficient to support a jury finding that the defendant broke into the building, either personally, or in chargeable combination with another, he cannot be convicted of burglary. *State* v. *Hart*, 119 Vt. 54, 58, 117 A.2d 387 (1955). An essential element of the crime cannot be supplied by suspicion, however strong. *State* v. *Angelucci*, 135 Vt. 43, 46, 373 A.2d 834 (1977).

■ Although the evidence in the case indicates there was, at some time between 5:30 p.m. and 2:30 a.m., a breaking into the building on the highway department premises, only conjecture ties it to the defendant. The presence of the defendant in the area earlier than the time of the surveillance of the property piled outside raises strong suspicions, but, by themselves, such suspicions are not enough to convict. *State* v. *Benoit*, 136 Vt. 431, 435–36, 392 A.2d 406 (1978). Without evidence sufficiently establishing that the defendant broke and entered the building a charge of burglary cannot be made out.

■ The deficiency is not corrected by use of the doctrine of unexplained possession of stolen property, referred to in the trial court's charge. See *State* v. *Beyor, supra,* 129 Vt. at 475, 282 A.2d 819. The impact of that doctrine is to point out that unexplained possession of recently stolen goods may jus-

tify inferences supporting the existence of other elements of larceny. But the inferential effect does not reach elements essential to establish the special characteristics of a crime like burglary, such as the breaking. The motion for a judgment of acquittal as it applied to the burglary charge should have been granted.

This does not necessarily dispose of the separate count for grand larceny. Not only was it charged in an independent count, but 13 V.S.A. § 2507 specifically authorizes that a person tried for burglary or robbery may be convicted of larceny if that offense is proved to the satisfaction of the jury. For this reason a separate examination is required for the motion for acquittal of the charge of grand larceny.

A review of the evidence reveals that all of the elements of grand larceny were sufficiently established to support both the denial of a motion for judgment of acquittal and the jury's ultimate verdict of guilty on the charge.

While under the eyes of the testifying officers the defendant removed from the premises of the owner property established as belonging to the state highway district office, took it into possession by placing it in his car, and was arrested as he prepared to leave the premises. The defendant attempts to divert attention from the effectiveness of these facts in satisfying the measure of proof required to support the conviction. But the argument that some other putative thief may have moved the property from one part of the owner's premises to another accomplishes nothing. Since theft itself yields no title, incomplete theft without removal from the owner's premises and possession in no way negates the highway department's continuing property in the goods. Thus, when the defendant took the items, he was taking them from the possession of the department and the theft was sufficiently evidenced. It is of no consequence to this charge that he may have done more, since this crime was established. The motion for acquittal was properly denied.

Whether he might also have been charged with receiving stolen property, as the defendant himself suggests, is of no moment. Where facts establish overlapping criminal offenses, the prosecutor may choose between them in the exer-

cise of a proper discretion. *State* v. *Tedesco*, 175 Conn. 279, 397 A.2d 1352, 1357 (1978). The issue is whether the charge laid against him was made out in a measure sufficient to go to the jury. It clearly was. There was no justification under the allegations of the complaint to charge the jury on the crime of receiving stolen property, even though requested.

 The defendant objected to the so-called "unexplained possession of stolen goods" charge already mentioned. Since the burglary count must be dismissed, this review is confined to the issue of larceny. The defendant's position is that it was possible, from the language used by the trial court, for the jury to understand the doctrine as a presumption, permitting conviction entirely on the basis of the defendant's possession of recently stolen property.

An examination of the charge given reveals that the trial court spoke only in terms of inferences to be drawn from such possession, and did nothing to suggest that such inferences could operate as some sort of presumption and justify conviction of larceny on the basis of possession alone. The charge followed our rule in the matter as expressed in *State* v. *Beyor, supra*, 129 Vt. at 475, 282 A.2d 819.

The defendant argues, however, that even the burden the possible inference put upon him was constitutionally impermissible and a violation of due process. The argument is based on a conception that the inference of knowing possession or of participation in the theft reaches the point of irrationality or arbitrariness. On this basis it is claimed that it offends *Leary* v. *United States*, 395 U.S. 6, 36 (1969), which requires the presumed fact to flow more likely than not from the proved fact upon which it depends.

The law of Vermont long ago made the judgment that possession of recently stolen goods does establish as enough more likely than not that the possessor knew the goods to be stolen and, further, that he was a participant in the larceny, to put a burden on that possessor to furnish an explanation, or run the risk of having that evidence make up part of the proof persuading a jury of his guilt. This is the rule of *State* v. *Beyor, supra*, 129 Vt. at 475, 282 A.2d 819 and its underlying cases. Although it seems clear that the logic of those inferences would survive the test of the *Leary* case just cited, it

must be pointed out that *Leary* deals with presumptions, and *Beyor* with inferences. Juries are free to draw or not draw such inferences from evidence before them as reason and experience warrants. This differentiates the operation of inferences from the structural consequences that follow the invocation of a presumption. Thus the constitutional challenge has no basis, and the objection to the charge fails.

To handle the habitual offender issue the trial court decided to divide the trial in two, following *State* v. *Cameron*, 126 Vt. 244, 249, 227 A.2d 276 (1967). The issues in the first part related only to current charges, and, to avoid prejudice, the previous offenses making up the habitual offender charge were not put before the jury in the first part of the trial.

Before trial the defendant filed a motion to exclude the past criminal record of the defendant so that he might testify in the first part of the trial without being compelled, by impeachment evidence, to concede past convictions relevant to the habitual charge. The trial court ruled that it intended to proceed with a single jury, but that the prosecution would not be allowed to use for impeachment purposes any prior convictions to be used in the second half of the trial. It was left open to the State to request a second jury if it found it was to use the same prior convictions to impeach and to prove the habitual offender charge.

Confronted with that ruling, the defendant objected that he was entitled to know, before jury drawing, whether or not the prior convictions, of which there were eight, charged in the habitual offender complaint, were going to be used in impeachment. If so, the defendant said he was entitled to know whether the same jury would be used on the second part of the trial. The prosecutor responded that he would use some of the charged past offenses in impeachment. The trial court said that it would not rule on the use of a second trial until the issue arose. It declined to give either side an advisory ruling.

The defendant did not testify. He now claims that he had relevant testimony to offer, but believed that to do so put out of reach any chance of acquittal on the habitual charge.

The defendant expected too much.

The court indicated a willingness to rule to prevent the use of the same criminal records for impeachment and habitual

criminal purposes before the same jury. If that purpose were carried out, presumably the defendant would be protected from prejudice, to an extent reaching beyond the concerns of *State* v. *Cameron, supra,* 126 Vt. at 249, 227 A.2d 276. That case did not deal with the statutory rule as to impeachment by prior conviction of 12 V.S.A. § 1608 and the legal right to attack credibility in this manner. *Pond* v. *Carter,* 126 Vt. 299, 307, 229 A.2d 248 (1967). Instead, it was directed at the prejudice created by evidence of previous criminal activity involving the same offense on the issue of guilt or innocence of the separate charge under consideration. *State* v. *Batchelor,* 135 Vt. 366, 369, 376 A.2d 737 (1977). But any complaint he may advance is compromised by the circumstance that the issue was never in fact presented in the case. Therefore, he has shown no error.

Before trial the defendant moved in opposition to the habitual offender issue by a motion asking for dismissal of that portion of the charges against him. He advanced as grounds assertions to the effect that the defendant was being singled out by the prosecutor for vigorously asserting his constitutional rights in a prior case, and that the prosecutor was therefore improperly motivated. This was said to raise the issue of unlawful discrimination under the Fourteenth Amendment.

His supporting allegations related that the habitual offender charge had not been previously employed by this prosecutor. The motion also referred to the prosecution of a case characterized by that prosecutor as "very weak" which was later overturned by this Court for lack of evidentiary support. *State* v. *Angelucci, supra,* 135 Vt. 43, 373 A.2d 834. Additionally, the motion recited instances of emotional conduct by the prosecutor expressive of both disappointment in the outcome of the just-cited case, and, on the occasion of a deposition proceeding in this case, expression of confidence that the defendant would be in prison as a result of this prosecution.

There was a hearing before the trial court on the motion, and arguments were presented on both sides. The defendant sought to have the prosecutor interrogated as a witness, but the prosecutor refused and the trial court did not require it.

An order issued denying the motion to dismiss on that ground. It pointed out, in accounting for the asserted failure to bring this charge on the previous prosecution, that the offenses urged here in support of the charge all occurred after prosecution commenced on the previous case. Thus, if the failure to charge as a habitual criminal on the earlier prosecution had any meaning at all, it was accounted for by the non-existence of these convictions at that time.

In any event, to successfully raise, let alone prevail, on an issue of discriminatory prosecution, the defendant has the burden of countering and overcoming strong policy considerations rejecting the availability of such a ground for dismissal.

The most vital concern relates to the possible intrusion of the judiciary into executive operations. It is basic that it is to be presumed in favor of prosecutorial action directed at violation of the criminal law that a good faith exercise of the discretion to prosecute is involved. As is said in *United States* v. *Falk,* 479 F.2d 616, 620 (7th Cir. 1973), "Certainly, the prospect of government prosecutors being called to the stand by every criminal defendant for cross-examination as to their motives in seeking an indictment is to be avoided." This is a specific recognition of a general concern expressed in *United States* v. *O'Brien,* 391 U.S. 367, 383 (1968), relative to legislative motives, where *McCray* v. *United States,* 195 U.S. 27, 56 (1904), was quoted: "The decisions of this court from the beginning lend no support whatever to the assumption that the judiciary may restrain the exercise of lawful power on the assumption that a wrongful purpose or motive has caused the power to be exerted."

The cases to which the defendant refers us, involving improper prosecutorial motivation, rest on more than an assumption. *Oyler* v. *Boles,* 368 U.S. 448, 456 (1962), stands for the proposition that a prosecutor's exercise of selectivity in enforcement is not itself a federal constitutional violation unless that decision was deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification. The cases of *United States* v. *Falk, supra; United States* v. *Steele,* 461 F.2d 1148 (9th Cir. 1972); and *United*

284

*States* v. *Crowthers,* 456 F.2d 1074 (4th Cir. 1972), all rest on the common concern of a prosecution centered upon a vocal resistor of governmental action, raising the issue of a prosecutorial purpose to stifle or inhibit the exercise of First Amendment rights. This, especially in view of the sensitivity of First Amendment concerns, led the circuit courts to find that the issue of motivation of the government prosecutors was relevant to the validity of the convictions.

■ What of the case before us? We agree with the holding of the trial court that the allegations of the defendant, in the light of the circumstances before that court, do not raise any issues of improper prosecutorial selectivity such as to support a claim of constitutional violation. Nothing by way of improperly discriminatory choice or infringement of sensitive constitutional right is documented in the motion. Policy requires much more than was presented to trigger an adversarial investigation into prosecutorial motivation. All this is so without regard to the fact that the Legislature has deliberately made the habitual offender allegation nonmandatory, in contrast to the ordinary criminal charge. 13 V.S.A. § 11.

After the verdict was returned convicting the defendant of criminal action charged in the information, the second half of the trial began. It was tried before the same jury, but that jury had not until then been informed concerning the existence of the habitual offender charge nor of the specific felonies making up the case.

The issue is statutory, and is set out in 13 V.S.A. § 11:

> A person who, after having been three time [sic] convicted within this state of felonies or attempts to commit felonies, or under the law of any other state, government or country, of crimes which, if committed within this state, would be felonious, commits a felony other than murder within this state, may be sentenced upon conviction of such fourth or subsequent offense to imprisonment for the term of his natural life.

The prosecutor began by presenting eight prior convictions, all outside the State of Vermont, for consideration on the habitual offender count. The procedure followed in establishing these convictions as a matter of relevant proof was for

the prosecutor to present certified documentation of the charges to which the defendant had pleaded guilty. Witnesses were presented to establish that the defendant before the court was indeed the person so charged and did so plead. Beyond that, the proof was concerned with the existence of sufficient parallels between Vermont and Pennsylvania law to test the validity of the Pennsylvania convictions as surrogate Vermont felonies. The jury verdict was in the form of interrogatories relating to the jury's determination of the fact of each conviction, plus a general inquiry as to whether they found the defendant had been convicted of three or more felonies.

By the time the matter reached the jury, all of the proffered convictions had been challenged and the available number reduced by rulings of the trial court to five. The challenges to those five have been carried here. Two general issues are raised: one as to the convictions as representing felonies under Vermont law, and the second relating to their availability as separate charges when the convictions were entered on the same day. The determinations of Pennsylvania law are to be reviewed as rulings on questions of law. V.R.Cr.P. 26.1.

Turning to the substantive content of the charges as felonies under Vermont law, we come first to a conviction of aggravated robbery under 18 Pennsylvania Statutes § 4705 committed on May 24, 1973, and robbery under 18 Pa. C.S.A. § 3701 committed on June 10, 1973. The defendant argues a distinction between fact patterns supporting conviction under the Pennsylvania statutes, and those under Vermont's assault and robbery statute, 13 V.S.A. § 608. There are certainly distinctions, but the short answer is that both of the Pennsylvania crimes include all the elements of the Vermont crime of larceny from the person, 13 V.S.A. § 2503, which is a felony. See *Commonwealth* v. *Mitchell*, 222 Pa. Super. Ct. 335, 295 A.2d 90 (1972); *Commonwealth* v. *Simpson*, 436 Pa. 459, 464, 260 A.2d 751 (1970). For the purposes of the habitual offender statute, these felonies were sufficiently established.

A motion for judgment of acquittal was filed attacking the validity of all of these convictions. In ruling on that motion the trial court excluded from application in the habitual offender charge a conviction for burglary under 18 Pa. C.S.A.

§ 3502 committed on May 24, 1973. It appeared to be conceded that the Vermont crime of burglary, 13 V.S.A. § 1201, required a "breaking" as noted in *State* v. *Hart, supra,* but the Pennsylvania statute did not. This ruling is not challenged here, and this conviction is not available to support the habitual criminal charge.

Each of the remaining two felony convictions are challenged as representing the possibility of conviction for acts not felonies under Vermont law. These were both examined by the lower court in the context of the motion for judgment of acquittal.

Taking first the aggravated assault charge asserted to have occurred on June 10, 1973, the Pennsylvania aggravated assault statute, 18 Pa. C.S.A. § 2702(a), contains sections relating to assaults on police officers, as does our own 13 V.S.A. § 1024 in subsection (4). The distinction the defendant would draw rests upon the assertion, unsupported by any citations, that under 18 Pa. C.S.A. § 2702(a)(3) it is only necessary that the assault be intentional, and a conviction can be had even if the defendant made a mistake as to the legality of the officer's action or did not know him to be a police officer.

The language of 18 Pa. C.S.A. § 2702(a)(3) reads:

> (3) attempts to cause or intentionally or knowingly causes bodily injury to a police officer making or attempting to make a lawful arrest.

The provisions of 13 V.S.A. § 1024(a)(4) read:

> (4) with intent to prevent a law enforcement officer from performing a lawful duty, he causes physical injury to any person.

Full treatment of this issue is aided by a consideration of 13 V.S.A. § 3001, also a felony:

> A person who hinders an officer, executive, judicial, civil or military, under the authority of this state, in the execution of his office shall be imprisoned not more than three years or fined not more than $500.00.

If the argument that the language of 18 Pa. C.S.A. § 2702 (a)(3) permits a conviction even if the defendant was mis-

taken as to the legality of the officer's action has any validity, it applies equally to 13 V.S.A. § 3001, since neither are phrased in terms of the "intent" said to be so restrictive in 13 V.S.A. § 1024(a)(4). We are not aided by case law construing this aspect of the statutes in either Pennsylvania or Vermont. However, consistency in construction supports the conclusion that the criminal law is of equal breadth in the two states on this issue.

Turning to the hypothesis that there may be a difference between the two states with respect to knowledge of the official capacity of the arresting officer, we do find some Vermont law. It has long been held under our statute that the accused must be shown to have known that the person hindered was an officer. *State* v. *Carpenter*, 54 Vt. 551 (1882). Again, this burden is placed upon the State without the aid of any "intent" requirement, noted in connection with 13 V.S.A. § 1024(a)(4).

It is reasonable to conclude that a parallel interpretation would apply to 18 Pa. C.S.A. § 2702(a)(3). A careful search of Pennsylvania law has revealed no contrary holding. Neither are there cases holding squarely that knowledge of the victim's official status is an essential element of the offense, but such inferences as can be drawn from the cases and statute all look in that direction. In *Commonwealth* v. *Bartman*, 240 Pa. Super. Ct. 495, 367 A.2d 1121 (1976), involving a charge under 18 Pa. C.S.A. § 2702(a)(3), the defendants, some of whom were acquitted, asserted that they were unaware that the persons with whom they had the altercation were state police officers out of uniform.

Also of some significance is *Commonwealth* v. *Secrest*, 256 Pa. Super. Ct. 423, 389 A.2d 1195 (1978). The propriety of a guilty plea was involved there, and the trial judge interrogated the defendant in order to establish that the plea was being intelligently and voluntarily made. The charge was made under 18 Pa. C.S.A. § 2702(a)(3). The defendant was asked, in the words of the statute, if he understood the nature of the crime as it involved assaulting police officers attempting to make a lawful arrest. He answered in the affirmative. He was then specifically asked, "You understand they were officers?" He again answered in the affirmative. The question

would have been unnecessary had his understanding been immaterial.

Also having a similar tendency is 18 Pa. C.S.A. § 505 (b) (1) (i) relating to defenses with respect to arrests. That particular section denies a person the right to use force to resist an arrest "which the actor knows is being made by a peace officer, although the arrest is unlawful." Presumably the situation is otherwise in the absence of such knowledge. The policy with respect to not resisting arrest is not unfamiliar to Vermont law. *State* v. *Blaine,* 133 Vt. 345, 348, 341 A.2d 16, 18 (1975); see also *In re Provencher,* 127 Vt. 558, 562, 255 A.2d 180 (1969).

▆▆▆ The position of the State that the conviction under 18 Pa. C.S.A. § 2702 (a) (3) sufficiently represents a felony conviction under Vermont law is well founded. It was appropriate for consideration under the habitual offender statute.

▆▆▆ The second of the remaining felony convictions involved the charge of kidnapping under 18 Pa. C.S.A. § 2901 committed on June 6, 1973. The defendant argues that the Vermont statute, 13 V.S.A. § 2401, requires all acts constituting kidnapping must be forcible or against the victim's will, while the Pennsylvania statute can be accomplished by removal or confinement by deception regardless of the victim's will.

Again we are directed to no authority confirming such an interpretation. The lower court came to the conclusion that "any plausible set of facts which could be conjured up under the Pennsylvania definition of kidnapping, 18 Pa. C.S.A. Section 2901, would also come within the Vermont definition." We agree. The defendant overlooks the presence of the term "inveigle" in the Vermont statute, which does service for "deception" in our statute. *State* v. *Rivers,* 84 Vt. 154, 78 A. 786 (1911). Also, the "hold to service" concept of 13 V.S.A. § 2401 is enlarged to include the intent to extort money or other valuable thing by 13 V.S.A. § 2403. No basis has been shown to invalidate the use of this conviction in connection with the habitual offender charge.

The defender raises a policy argument, not within the language of 13 V.S.A. § 11, that convictions entered on the same

day should be counted as only one felony conviction for habitual offender purposes. This argument is to be distinguished from the policy that determines that multiple convictions that arise out of the same criminal transaction are to be treated as one for habitual criminal purposes. The trial court did, in fact, treat the two June 10 crimes as giving rise to a single conviction for the purposes of this proceeding, and we affirm. *State* v. *Sanchez*, 87 N.M. 256, 531 P.2d 1229 (Ct. App. 1975).

But the defendant wishes to enlarge on this rule and have it apply to all convictions entered on the same day, irrespective of any differences between them as to their being separate criminal transactions. There is support in the law for this contention. See Annot., *Habitual Criminal Statutes*, 24 A.L.R.2d 1247 (1952). But, viewed in the light of our statutory language, we find the better rule to be that it is sufficient that it be shown only that the convictions spring from separate criminal incidents, without regard to the happenstance that the convictions were entered all on the same day. The statute requires no more than that. *State* v. *Sanchez*, *supra*.

Both sides argue that the sentencing procedure used in this case was not correct. The issue is clearly before us, and the State's motion to foreclose review is denied. It is clear that the function of the habitual offender statute is to replace the statutory term for the fourth and subsequent felony convictions with a life sentence, where the statute has been properly invoked. *State* v. *Kasper*, 137 Vt. 184, 213, 404 A.2d 85 (1979). Even so, since the statute uses the words "may be sentenced upon conviction of such fourth or subsequent offense to imprisonment for the term of his natural life," the life sentence is not compelled.

However, it would seem clear that the sentencing options open are only either the statutory term prescribed for the particular felony conviction constituting the "fourth or subsequent" offense, or a life sentence. Options above the statutory maximum but less than life are not suggested in the statute, and we find them to be unauthorized.

In this case, the lower court actually imposed concurrent sentences of not less than ten nor more than thirty years on

290

the burglary, grand larceny and habitual offender charges. With the one valid felony conviction of grand larceny available for application of 13 V.S.A. § 11, the sentence must either be in accordance with the grand larceny statute, 13 V.S.A. § 2501, which is imprisonment for not more than ten years or fined not more than $500.00, or both, or else the life sentence should be imposed, based upon the establishment of habitual offender status. Under these circumstances, the matter will be remanded so that the defendant may be resentenced in accordance with the procedures set out above.

*The judgment of conviction of burglary in the nighttime is reversed, the sentence stricken and the entry of judgment of acquittal on that charge is ordered; the judgments of conviction of the charge of grand larceny and of being a fourth offender are affirmed and the cause remanded for resentencing on the basis of those judgments in accordance with the views expressed in the opinion.*