■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PIERRE LIMAGE, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered August 1, 1975, convicting him of rape in the first degree, sexual abuse in the first degree and sexual misconduct, upon a jury verdict, and imposing sentence. Judgment reversed, on the law, and new trial ordered. No fact issues were presented for review. It was conceded by both the complainant and defendant that they had sexual relations in defendant's stepfather's home on the evening of November 12, 1973. There were no eyewitnesses to the sexual intercourse although others had been present in the house. The sole issue for the jury was whether the sexual intercourse was consensual or accomplished by force. The jury resolved that issue in favor of the People. The verdict depended upon whether the jury believed the testimony of the complainant or of the defendant. The Trial Judge interrogated all of the witnesses at length. Most of his questioning was for the purpose of clarifying testimony. The remainder was to elicit significant facts or to facilitate the orderly and expeditious progress of the trial, and, therefore, was proper (see *People v Mendes*, 3 NY2d 120). Although a Trial Judge should proceed with caution on his prerogative to question witnesses, in this instance his conduct did not deprive defendant of a fair trial. The Trial Judge did not indicate disbelief of witnesses or convey to the jury that he believed defendant was guilty. His frequent interruptions elicited evidence favorable to the defendant as well as to the prosecution. Counsel for both sides generally acquiesced in this questioning. Immediately after the alleged rape, complainant telephoned the police from a neighborhood bar. The police responded quickly and complainant accompanied them to the home of defendant's stepfather. Defendant was not there. Although defendant, a citizen of Haiti, knew that the police were looking for him, he departed for Haiti within a week or two after the incident. He was arrested when he returned to this country over a year later. Despite strenuous objection by defense counsel, the Trial Judge admitted evidence of flight. Defense counsel's objection and motion for a mistrial were denied. Believing that the People's evidence of flight was extremely damaging to him, the defendant, in the course of his testimony, attempted to explain the circumstances surrounding his return to Haiti. The prosecutor cross-examined defendant on this point and concluded his summation to the jury by emphasizing that defendant's departure to Haiti was evidence of guilt. Defense counsel's request that the court charge the jury as to the effect of flight was denied. Although the evidence of flight was admissible, the trial court was required to instruct the jury as to the limited probative value which may be attributed to such evidence. The courts have "always recognized the ambiguity of evidence of flight and [have] insisted that the jury be closely instructed as to its weakness as an indication of guilt of the crime charged" *(People v Yazum, 13 NY2d 302, 304)*. It should be noted that on the evidence adduced at the trial, defendant was either guilty of rape in the

first degree or of no crime at all. Therefore, it was improper for the trial court to have charged the jury as to the crimes of sexual abuse and sexual misconduct. It is conceded that on the new trial the sole issue shall be rape in the first degree. Cohalan, J. P., Suozzi and Mollen, JJ., concur; Hawkins, J., dissents and votes to modify the judgment by reversing the convictions for sexual abuse in the first degree and sexual misconduct, and dismissing those counts as lesser included crimes, and by affirming the conviction of rape in the first degree, with the following memorandum: Defendant, in a voluminous brief, striving to fashion a "Brandeis brief", poses no less than 14 specific points justifying reversal. Except for the charge on sexual misconduct, conceded by the People to be a lesser included crime, none of these contentions is of real substance. The only one, in my opinion, meriting extended discussion is the trial court's refusal to charge on the defendant's "flight" and the permissible inferences to be drawn therefrom by the jury. The fact of the defendant's flight—if, indeed, it was flight—was not introduced to permit an inference of guilt, but rather to explain that the considerable delay between the incident's occurrence, and defendant's apprehension resulted from the defendant's absence from the jurisdiction. It was not caused by the police failing to give credence to the complainant's charges. On the contrary, it appears that the People were unaware of defendant's absence until defendant, upon his cross-examination, explained that it was occasioned by another unrelated prior incident. Paradoxically, refusing so to charge was to defendant's advantage, for a charge would have accorded the jury leave to draw an inference of guilt—no matter how weak or tenuous the presumption—from a fact the jury was not otherwise presented with as a basis for any conclusion. Respecting the contention that the trial court unduly participated in the trial by extensive questioning, the defendant's "score card" of the number of question propounded would reduce the role of a Trial Judge to a "numbers test". He may inquire to clarify issues to the end of eliciting significant facts and expediting the trial. (People v Hinton, 31 NY2d 71). Many of the questions apparently resulted from the trial court's disenchantment with the conduct of both attorneys and several were posed to defendant's advantage. A Trial Judge is not so fettered that he must remain "an amorphous glob". It may well be, to use Lord Bacon's memorable phrase, that "an over-speaking judge is no well-tuned cymbal"; nevertheless, I do not find the trial court's participation to constitute such reversible error as to warrant a new trial.