# State of Vermont v. Ronald D. Unwin

[424 A.2d 251]

No. 344-79

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed November 5, 1980

*Mark J. Keller,* Chittenden County State's Attorney, and *Timothy U. Martin,* Law Clerk (On the Brief), Burlington, for Plaintiff.

*James L. Morse,* Defender General, *William A. Nelson,* Appellate Defender, and *George Spangler,* Law Clerk (On the Brief), Montpelier, for Defendant.

**Billings, J.** At about 2 A.M. on January 25, 1979, three college students, including Steven Renehan and Paul Harrison, left a bar in Burlington. During the next hour or hour and a half, there were three confrontations between this group and another group of three men, which included the defendant. The two groups had not met before.

The first confrontation began when the three students accused the other three men of throwing a bottle at them. There was some shoving, but this confrontation quickly stopped when a policeman happened by. Both groups said there was no trouble, and they separated.

The second encounter occurred a short time later. This time there was a fight between one of the students and one of the other men, and the student was badly beaten. Police arrived as his friends were helping him to their car. They said they did not want to file charges, and the policemen left.

The third confrontation occurred as the students were about to get into their car. The defendant and his friends ran up and another fight broke out. During this fight Steven Renehan was stabbed in the heart, lungs and abdomen. The defendant and his friends ran. Police quickly arrived, and Paul Harrison

gave them a description of the defendant and his friends. This description was broadcast over the police radio, and all three were arrested shortly thereafter.

The defendant was charged with aggravated assault, and was tried in District Court before a jury. At the trial, Steven Renehan identified the defendant as the man who had stabbed him. On August 2, 1979, the defendant was found guilty as charged.

The defendant has appealed and urges four grounds for reversal. First, he argues that there was no probable cause for his arrest, and that because of this illegal arrest certain out-of-court identifications should have been suppressed. Second, he argues that certain out-of-court identifications were unnecessarily suggestive and therefore should have been suppressed. The defendant's third argument is that the court's instruction to the jury on the issue of the defendant's flight was prejudicial. Finally, the defendant argues that he was denied the right to a speedy trial.

The defendant's first argument is that his arrest was not based on probable cause, and that all fruits of this arrest should have been suppressed. The defendant and his two friends were arrested twelve to fifteen minutes after Renehan was stabbed. The arresting officer testified that he was looking for three men who met the following description: "Three male subjects approximately twenty to twenty-five years of age. One of these subjects allegedly had on a three-quarter length greyish-blue coat. Also, one subject either had long hair or possibly a ponytail." The defendant conceded at oral argument that this description is sufficient to show probable cause. This is certainly true considering the circumstances of this case. The defendant and his two friends were arrested about twelve to fifteen minutes after the stabbing, about one third of a mile from where the stabbing occurred. They had run in the general direction of the place where they were arrested. It was about 3:30 in the morning in late January. It was cold and snowing. There were very few other pedestrians on the streets at that time. The arresting officer testified that this was the only group of three people he saw during his search. The defendant argues, however, that it is not clear from the record where the arresting officer got the description he used. The defendant relies on cases such as *Brinegar* v. *United States*,

338 U.S. 160 (1949), and *Whiteley* v. *Warden*, 401 U.S. 560 (1971), which require that probable cause for an arrest be based on trustworthy information. The defendant argues that since the record does not clearly show where the arresting officer got the description, it cannot be shown that the officer was relying on trustworthy information.

At a hearing dealing with this issue, the arresting officer stated that he received a description of the suspects over the police radio, another description from another officer, who did not testify, and another from some person unknown to him. The officer did not specify the exact descriptions he received from each of these sources. The defendant argues that since the description the officer was relying on may have come from some unknown person, or from the other police officer, whose own source was not specified, it cannot be shown that the arresting officer had a reliable source for his description of the suspects.

For several reasons, the defendant's arguments must be rejected. First, there was clearly a trustworthy source for the greater part of the description relied on by the arresting officer. Paul Harrison, one of the students, gave an officer a description of the three suspects. According to the officer, this description was of "three male subjects, approximately twenty to twenty-five years of age, all with long brown hair." Harrison was, of course, an eyewitness, and therefore was a reliable source for this information. See *United States* v. *Masterson*, 517 F.2d 8 (8th Cir.), *cert. denied*, 423 U.S. 915 (1975); *Commonwealth* v. *Carter*, 444 Pa. 405, 282 A.2d 375 (1971). The officer broadcast this description on the police radio. The arresting officer was justified in relying on this description when he heard it on the police radio. *Whiteley* v. *Warden*, *supra; United States* v. *Impson*, 482 F.2d 197 (5th Cir.), *cert. denied*, 414 U.S. 1009 (1973).

The only important fact missing from the description radioed by the officer was that one suspect was wearing a three-quarter length grey coat. Even though the arresting officer's source for this fact is not clear, this is not important. First, under the circumstances of this case, the description broadcast on the police radio was sufficient to show probable cause for the arrest. Second, even if the information concerning

the coat came from some unidentified person, it could be taken into account in determining if there was probable cause to arrest the defendant. In general, in determining if there is probable cause, information may be considered, even if its reliability is not independently shown, if it is corroborated by reliable evidence. *Adams* v. *Williams,* 407 U.S. 143 (1972); *United States* v. *Elgisser,* 334 F.2d 103 (2d Cir.), *cert. denied,* 379 U.S. 881 (1964). In this case any description received from an unidentified source was corroborated by the reliable description on the police radio.

■ The defendant next argues that certain out-of-court identifications should have been suppressed. After the police arrived at the scene of the stabbing, Paul Harrison accompanied a police officer in searching for the suspects. During this time, Harrison was very agitated and was swearing vengeance against those who had stabbed his friend. After a few minutes the officer received a radio report that three suspects had been arrested. Harrison immediately calmed down. When they arrived at the scene of the arrest, the three suspects, including the defendant, were in handcuffs, and one at a time were led in front of Harrison who was sitting in the police car. He identified them as the three men that had been involved in the confrontation. Later at the police station the three were placed in separate rooms and Harrison was taken into each room in turn. He again identified the three men. He testified about both of these out-of-court identifications during the trial.

The defendant argues that each of these out-of-court identifications was unnecessarily suggestive, and that the admission of testimony about them constituted a violation of his due process rights. Although it is clear that these identifications were suggestive, we find that there was no error in the admission of testimony concerning them.

■■ It is, of course, true that the circumstances surrounding an out-of-court identification may so unnecessarily suggest the guilt of the suspect that the admission of testimony relating to the identification may be prejudicial. *Stovall* v. *Denno,* 388 U.S. 293, 302 (1967). The mere fact that the circumstances are suggestive, however, does not require that an identification be excluded. *Manson* v. *Brathwaite,* 432 U.S.

98 (1977); *State* v. *Kasper,* 137 Vt. 184, 404 A.2d 85 (1979). The crucial factor is the reliability of the identification. *Manson* v. *Brathwaite, supra,* 432 U.S. at 114; *State* v. *Kasper, supra,* 137 Vt. at 192, 404 A.2d at 90. The totality of the circumstances must be considered. *Stovall* v. *Denno, supra,* 388 U.S. at 302. The Supreme Court has specified five factors to be considered in evaluating the reliability of an out-of-court identification. These are: the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention at that time, the accuracy of any prior description of the criminal, the degree of certainty shown by the witness at the confrontation, and the length of time between the crime and the confrontation. *Manson* v. *Brathwaite, supra,* 432 U.S. at 114; *Neil* v. *Biggers,* 409 U.S. 188, 199–200 (1972). An identification must be excluded only if there is a very substantial likelihood of a misidentification. *Manson* v. *Brathwaite, supra,* 432 U.S. at 116.

When the test of *Brathwaite* and *Biggers* is applied to the facts of the case at hand, it is clear that the out-of-court identifications of the defendant were reliable. Harrison had an opportunity to view the defendant at arms length, in well lit areas, during three separate confrontations over a period of less than one and one-half hours. During each of these encounters Harrison's attention was undoubtedly focused on the men he and his friends were fighting. The time between the stabbing and the identifications of the defendant was very short, the first only about fifteen minutes later. The description of the suspects given by Harrison was not very detailed, but it did correspond to the defendant and his friends. Harrison never stated that he was certain of his original identification, but neither did he express any uncertainty.

The effect of the last two factors is neutral, but the first three factors strongly suggest the reliability of the identification. The witness had an excellent opportunity to view the defendant, his attention was strongly directed to the defendant, and the identification occurred very shortly after the crime, when it was still fresh in the mind of the witness.

Even if the out-of-court identifications could be considered unnecessarily suggestive, their admission in this case would have been harmless error. These identifications were of the

defendant as one of the three men who were involved in the confrontations with the three students, not of the defendant as the one who stabbed Steven Renehan. The defense never tried to argue that the defendant was not involved in the confrontations. The basis of the defense was that it was not clear which one of the three had actually stabbed Renehan. The out-of-court identifications were simply not relevant to this argument.

■■ The defendant's next argument is that the court erred when it instructed the jury that they could consider the defendant's flight from the scene of the crime as tending to show the consciousness of guilt. Evidence of flight is generally considered to have little probative value, see *Wong Sun* v. *United States,* 371 U.S. 471, 483 n.10 (1963), and is not sufficient by itself to support a conviction. See, e.g., *United States* v. *Caro,* 569 F.2d 411 (5th Cir. 1978). Nevertheless, courts have generally permitted juries to infer the consciousness of guilt, and thus guilt, from evidence of flight. 1 Wharton's Criminal Evidence § 143 (13th ed. 1972). This is true in Vermont. *State* v. *Dugee,* 101 Vt. 491, 144 A. 689 (1929). Some courts have permitted evidence of flight to be introduced only if the court instructs the jury about the limited probative value of such evidence. See, e.g., *People* v. *Limage,* 57 App. Div. 2d 906, 394 N.Y.S.2d 458 (1977). In the case at hand, the court gave a carefully limited instruction to the jury. The court gave the following instruction:

> There has been evidence introduced in this case tending to show that the defendant fled from the scene of the incident. If you find that he did this, it does not raise any presumption of guilt because there are many reasons for such conduct including fear, ignorance, confusion or the like, which are consistent with the claim of innocence. But you are entitled to consider these facts if you find such to be the case as tending to show a consciousness of guilt on his part. Weighing it along with his state of mind, mental capacity and reasoning powers, you are to give these matters such weight as you think they are entitled to under the circumstances.

The defendant argues that this instruction was in error because of the circumstances of this case. The principal defense

he asserted was mistaken identity; that the man who stabbed Steve Renehan was one of the other two men involved in the confrontations with the three students. These two also ran from the scene of the stabbing, and the defendant argues that the flight of all three is equally suggestive of the guilt of one of his companions. The defendant argues that the court's instructions encouraged the jury to give too much weight to the fact of the defendant's flight alone.

This would have been a suitable argument for the defense to make to the jury. It does not show that the court's instructions were prejudicial, however. As noted above, the court's instructions on flight were carefully limited, and they did not encourage the jury to give too much weight to the fact of the defendant's flight.

The defendant's final argument is that he was denied his right to a speedy trial. The defendant was arrested and arraigned on January 25, 1979, and his trial did not begin until July 31, 1979, more than six months later. The defendant was in jail during this entire time for lack of bail. The defendant argues that this delay in bringing him to trial is a violation of the spirit and purpose of 12 V.S.A. App. VIII, A.O. 5 (hereafter Administrative Order 5), and a violation of the sixth amendment to the United States Constitution.

Administrative Order 5, § 2 states: "Cases in which the defendant is in custody shall proceed to trial within 90 days from the date of arraignment, except for exceptional circumstances, showing cause for temporary postponement." Section 4 lists certain periods which are excluded in determining the time within which the state should be ready for trial, including "pre-trial motions . . . and the period during which such matters are under consideration by the courts." *Id.* § 4(a). In this case there were a number of pre-trial motions, the most important of which was the motion to suppress Paul Harrison's out-of-court identification of the defendant. The trial court took almost three months to decide this motion.

The defendant argues that the trial court was not justified in taking so long to decide this motion, and that this period should not be subtracted from the period used to determine compliance with Administrative Order 5. We agree that the trial court should not have taken three months to decide a

pre-trial motion when the defendant was in jail, but this does not affect our decision.

Administrative Order 5 permits but does not require a trial court to dismiss a criminal case which has not proceeded to trial within a certain period. *State* v. *Angelucci,* 137 Vt. 272, 405 A.2d 33 (1979); *State* v. *Chamberlin,* 131 Vt. 549, 310 A.2d 30 (1973). This order does not confer any additional rights on the individual defendant, *State* v. *Chamberlin, supra,* 131 Vt. at 551, 310 A.2d at 32, and is "not invocable as a matter of right by a defendant." *State* v. *Angelucci, supra,* 137 Vt. at 277, 405 A.2d at 35. The trial court held a hearing on this issue and, after determining that the defendant had not been prejudiced by the delay, denied the defendant's motion to dismiss.[1] This question is for the sound discretion of the trial court, and will not be disturbed on appeal. *State* v. *Angelucci, supra.*

The defendant also contends that the delay in bringing him to trial violated his constitutional right to a speedy trial. The Supreme Court has recognized that it is "impossible to determine with precision when the right has been denied." *Barker* v. *Wingo,* 407 U.S. 514, 521 (1972). In *Barker,* the Court specified four factors that must be considered in evaluating a speedy trial claim. These are: the length of the delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant. *Id.* at 530.

An evaluation of this case in relation to these factors leads to the conclusion that the defendant's right to a speedy trial was not violated. In *Barker,* the Court described the length of the delay as a "triggering mechanism" which may then require a consideration of the other factors. *Id.* We believe that a delay of more than six months in a case involving an incarcerated defendant is long enough to require that the other factors be considered.

The reasons for the delay in this case are not clear from the record. Part of the delay is the result of the three months which the trial court took to decide the motion to suppress. Apart from this, the cause of the delay is not explained. The

---

[1] The judge that heard this motion was not the judge that heard the motion to suppress the out-of-court identification.

defense does not claim that there was any deliberate attempt by the prosecution to hinder the defense. The Court in *Barker* said that such an attempt should be weighted heavily against the prosecution. *Id.* at 531. The court went on to say: "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily . . . ." *Id.* This factor, then, should be considered to weigh against the state, but not very strongly.

The third factor is the defendant's assertion of his right. The only time the issue was raised below was about five months after the defendant's arrest, when the defense moved to dismiss for lack of a speedy trial. The court denied the motion after hearing. The trial actually began slightly more than one month after the motion was filed. The record does not show the defendant ever demanded a prompt trial, either before or after this motion. A motion to dismiss based on an alleged violation of the right to a speedy trial is not the equivalent of a demand for an immediate trial. A demand would give the state the opportunity to promptly schedule a trial. The defendant's motion, however, offered only what the Supreme Court referred to as the "unsatisfactorily severe remedy of dismissal." *Id.* at 522. Furthermore, the defense could move to dismiss without themselves being prepared for a trial. A demand for a trial would require that the defense be prepared. In *United States* v. *Avalos,* 541 F.2d 1100 (5th Cir. 1976), the defendant had raised the speedy trial issue in a motion to dismiss, but had not demanded an immediate trial. The court said that "the record does not show that . . . the appellants aggressively asserted that desire for speedy trial which they now urge has been thwarted. That fact will militate against a claim that speedy trial was denied." *Id.* at 1115.

In this case there was also some indication of the defendant's desire for a prompt trial in repeated discovery motions demanding the production of items that the court had ordered of the state. These motions also are not the equivalent of demands for a speedy trial. The record does not indicate that the defendant fulfilled his responsibility of asserting his right. See *Barker* v. *Wingo, supra,* 407 U.S. at 531. Furthermore, the defendant's trial actually began only about a month after the first and only time he raised the issue. This factor does not support the defendant's claim.

The final factor to consider is the prejudice to the defendant. This is the most important of the factors. *United States v. Reynolds,* 489 F.2d 4 (6th Cir. 1973), *cert. denied,* 416 U.S. 988 (1974). One component of this is the prejudice resulting from pre-trial incarceration. In this respect, the defendant was prejudiced by his lengthy pre-trial incarceration. The most important consideration, however, is prejudice to the defense at trial. *Barker* v. *Wingo, supra,* 407 U.S. at 532. In this case, the defendant has failed to make any specific claims of prejudice. He has only raised the possibility that the memories of some defense witnesses may have been impaired by the delay. This is not a sufficient allegation of prejudice. *United States* v. *Netterville,* 553 F.2d 903, 915 (5th Cir. 1977); *United States* v. *Avalos, supra,* 541 F.2d at 1116; *United States* v. *Payden,* 536 F.2d 541, 544 (2d Cir. 1976).

After a consideration of these four factors, we conclude that the defendant was not denied the constitutional right to a speedy trial. The delay was, perhaps, longer than it should have been, but does not amount to a constitutional violation.

*Affirmed.*