## State of Vermont v. Birger Williams

[467 A.2d 667]

No. 511-81

Present: **Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.**

Opinion Filed September 6, 1983

398

*James P. Mongeon*, Rutland County State's Attorney, and *William Taylor*, Law Clerk (On the Brief), Rutland, for Plaintiff-Appellee.

*Martin & Paolini*, Barre, for Defendant-Appellant.

**Gibson, J.** Defendant was convicted on October 2, 1981, after trial by jury, of two counts of aggravated assault in violation of 13 V.S.A. § 1024 and one count of kidnapping, 13 V.S.A. § 2401. On appeal, defendant raises three claims of error: (1) whether the trial court lacked jurisdiction over defendant because it allegedly dismissed all three charges and the State failed to refile them; (2) whether the time elapsed between incarceration and trial infringed defendant's constitutional right to a speedy trial; and (3) whether the trial court erred in denying defendant's motion for a mistrial because of prejudicial statements made before the jury by the prosecution's psychiatrist. We disagree with defendant's claimed errors and affirm the conviction.

On March 3, 1980, defendant picked up a woman hitchhiking home from work sometime after 9:00 p.m. As they drove east on Vermont Route 4 toward Bridgewater, defendant asked the hitchhiker if she would "do him a favor" and offered her $100 if she would acquiesce. She said no and asked to be let out of the car. Defendant pulled into a parking area and the victim tried to flee. The two struggled, but the six foot seven inch defendant subdued the five foot tall woman by hitting her around the head and shoulders, and then choking her into unconsciousness.

When the woman regained consciousness, she was lying on the floor of the car, covered with a blanket or jacket. Defendant was again driving, now with one hand on the woman's back, holding her on the floor and admonishing her to keep her head down and not to look at him. Defendant told her he would release her when he found a dirt road to drive down so that he could have more time to escape. Because she was fearful of leaving the travelled highway, the woman grabbed the steering wheel, causing the car to swerve out of control. Defendant then agreed to let her out of the car right away. After slowing slightly and waiting for traffic to pass, defendant shoved the woman out the car door and sped away. She made her way to a nearby inn and contacted the Vermont State Police.

Two days later, the State filed an information charging defendant with kidnapping, two counts of aggravated assault, and driving with license suspended. Defendant pled not guilty by reason of insanity, and a psychiatric examination was ordered. Defendant was sent to the Vermont State Hospital for examination, and as a result of that evaluation, the trial court, on April 24, 1980, ordered defendant hospitalized, pursuant to 13 V.S.A. § 4822.

I.

Defendant's first issue on appeal is that the trial court lacked jurisdiction because, "[o]n April 24, 1980, all pending charges against [defendant] were dismissed without prejudice." No new charges were ever brought by the State.

Defendant is correct that a conviction is invalid when, due to an entry of nolle prosequi or a dismissal by the court, defendant is one against whom no charges are pending. *State*

v. *Dopp*, 127 Vt. 573, 574–75, 255 A.2d 190, 192 (1969) ; *In re Crepeault*, 125 Vt. 360, 361, 215 A.2d 524, 525 (1965) ; V.R.Cr.P. 48. Defendant is in error, however, in his premise that no charges were pending by virtue of the court-ordered hospitalization. Notwithstanding any inferences which may be read into comments by the trial court or the state's attorney at the hospitalization hearing on April 24, 1980, a review of the record discloses that there was never, in fact, a dismissal. Various pretrial motions were filed by trial counsel for defendant well after that date, all referencing the same docket numbers. Moreover, during a September 1981 hearing on a defense motion to dismiss for lack of a prima facie case, in the context of a discussion about setting the case for trial on the merits, the following conversation took place:

> State's Attorney: Just for the record, Your Honor, this is the same charge that was originally brought [in March of 1980]. This has not been a subject of dismissal and then a refiling.
>
> Defendant's
> Trial Attorney: Right, it's been pending all along, Your Honor.
>
> Court: Since March of 1980?
>
> State's Attorney: It remained pending during the course of hospitalization, Your Honor.

The record is clear that of the four offenses charged by information in March of 1980, only one offense—driving with license suspended—was dismissed by the State. That occurred on July 20, 1981. Bail requirements in connection with the remaining three charges were never rescinded by the court. There is no merit to defendant's challenge to the jurisdiction of the trial court.

## II.

Defendant's second claimed error is that his Sixth Amendment right to a speedy trial was denied by the delay of almost twenty months from the time of his original incarceration to the date of trial. Defendant places primary reliance on 12 V.S.A. App. VIII, A.O. 5, this Court's administrative order

designed to insure prompt and efficient disposition of criminal cases, and *State* v. *Franklin*, 136 Vt. 568, 396 A.2d 138 (1978), where the passage of over eighteen months from citation to trial, a delay not brought about by defendant, was held to constitute prejudice as a matter of law. For reasons which appear herein, we conclude that defendant's reliance is misplaced and that his constitutional right to a speedy trial was not violated.

Analysis of a speedy trial issue in Vermont requires consideration of the four factors outlined by the United States Supreme Court in *Barker* v. *Wingo*, 407 U.S. 514, 532–33 (1972) : length of delay, reason for delay, defendant's assertion of his right, and prejudice to defendant. See also *State* v. *Unwin*, 139 Vt. 186, 195, 424 A.2d 251, 257 (1980), *cert. denied*, 450 U.S. 1033 (1981). Determination of a properly raised speedy trial claim is in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *State* v. *Roy*, 140 Vt. 219, 228, 436 A.2d 1090, 1094 (1981) ; *State* v. *Unwin, supra*, 139 Vt. at 195, 424 A.2d at 256.

## A. Length of Delay

Although the first factor to consider, length of delay, is not dispositive of the constitutional question, and at most operates as a triggering device for further inquiry, *Barker* v. *Wingo, supra*, 407 U.S. at 530, as a threshold matter this Court demands an accurate determination of the time elapsed. A.O. 5, § 4; see also *Barker* v. *Wingo, supra*.

Defendant was arraigned March 5, 1980, and immediately remanded to the custody of the Department of Mental Health for a determination of his competency to stand trial. 13 V.S.A. §§ 4814, 4815. Preliminary psychiatric evaluations were completed and presented to the court on April 24, 1980. As provided by A.O. 5, § 4(a), delay occasioned by the need to determine competency to stand trial is excluded from consideration.

Also excluded are the delays accompanying pretrial motions and those resulting from defense-requested continuances. Thus, the period from July 1, 1981, to September 30, 1981, the date of trial, is not to be considered in computing time. During that three-month period, defendant filed a motion to dismiss and then requested two continuances. *Id.* at §§ 4(a)

and (b). The period remaining, from April 24, 1980, through July 1, 1981, is therefore the maximum time frame against which this Court must balance the three remaining *Barker* factors: reason for delay, assertion of right to speedy trial, and prejudice to defendant. This time thus equals fourteen months and six days, not the twenty months claimed by defendant.

## B. Reason for Delay

During the entire period of delay, defendant was in the custody of the Department of Mental Health and was a patient at the Vermont State Hospital in Waterbury. He had been found by the trial court to be competent to stand trial, but "sexually very dangerous . . . [and without] . . . sufficient control over his actions to comply with the law." The court therefore ordered him hospitalized as a "person in need of treatment" and a "patient in need of further treatment," 18 V.S.A. §§ 7101(16) and (17); as such, during his hospitalization he had "the same status, and the same rights [as a person subject to involuntary civil commitment], including the right to receive care and treatment, to be examined and discharged, and to apply for and obtain judicial review . . . ." 13 V.S.A. § 4822(b) (incorporating by specific reference the involuntary civil commitment procedures of 18 V.S.A. §§ 7611–7622).

Defendant directs our attention to *State ex rel. Haskins* v. *County Court of Dodge County*, 62 Wis. 2d 250, 214 N.W.2d 575 (1974) (hereinafter *Dodge County*), and claims it supports his thesis that pretrial commitment to a mental institution for a substantial period of time is unreasonable, hence offensive under the *Barker* analysis. However, we fail to see that *Dodge County* has any applicability herein. In its very thorough analysis, the Supreme Court of Wisconsin ruled that a criminal defendant found incompetent to stand trial may only be held for retesting for a maximum of eighteen months. If competency to stand trial has not by then been regained, the criminal commitment must end and involuntary civil commitment proceeding be initiated. *Id.* at 261–62, 214 N.W.2d at 581. This procedure is designed to assure that the greater due process protections of civil commitment accrue to a defendant, and that a criminal defendant not be committed, pursuant to pretrial procedures, longer than is reasonably necessary to determine competency. Cf. *Jackson* v. *Indiana*, 406 U.S. 715, 738

(1972) (although absolute time frames are not constitutionally mandated, a person may not be committed as incompetent to stand trial longer than is necessary to make such a determination, unless justified by progress toward that goal). But see *Jones* v. *United States,* 103 S. Ct. 3043 (1983) (defendant who successfully defends against criminal charge on the basis of insanity may be confined for a longer period than maximum possible incarceration for crime without offending due process, even where statute provides for a lower burden of proof by the State for continued confinement).

However, here we are not faced with an incompetent defendant, but a competent one. At the April 24, 1980, hearing, the court heard testimony from the examining psychiatrist and found defendant competent to stand trial. 13 V.S.A. § 4817. Nevertheless, medical testimony at the hearing also indicated that defendant was insane at the time of the offense, thus triggering the need to decide whether defendant should be hospitalized. *Id.* § 4820 (1). Consequently, and with the agreement of all parties, defendant was remanded to the Department of Mental Health for an indeterminate period. 13 V.S.A. § 4822(a). But see *State* v. *Mayer,* 139 Vt. 176, 423 A.2d 492 (1980) (implicit in the order under § 4822(a) is a ninety-day limitation pursuant to 18 V.S.A. § 7619, subsequent to which an application may be filed for continued treatment under § 7620). Once in the Vermont State Hospital under the strictures of 18 V.S.A. §§ 7611–7622, defendant clearly could not be said to be incarcerated without opportunity to petition for redress, as were the petitioners in the Wisconsin case; rather, he was afforded the rights of any patient to apply for discharge after 90 days, *id.* § 7801, and an automatic administrative review every six months. *Id.* § 7802. The formal hearing which the petitioners in Wisconsin sought parallels closely the hospitalization hearing which this defendant received by virtue of 13 V.S.A. § 4820, in that defendant had the same status and rights as a person subject to involuntary civil commitment. To the extent that *Dodge County* is instructive, it is in the conclusion which returns to the proper focus of analysis:

> [D]ismissal for lack of speedy trial in cases such as these [where defendant is incarcerated due to mental disease or defect prior to an adjudication of guilt] would hinge upon

a court's determination of whether the delay resulted in a prejudice to the defendant and would deny the constitutional right to a fair trial.

*Dodge County, supra,* 62 Wis. 2d at 271, 214 N.W.2d at 586.

As mentioned above, perhaps the most important reasons for the delay in this case are the acquiescence by defendant to hospitalization and the apparent willingness of the State to let defendant remain in a secure facility without any attempt to schedule promptly a trial on the merits. In this regard, the State's position did not change until defendant began to take steps to secure his own release from the hospital and to alter his involuntary commitment status. At the April 24 hospitalization hearing, both the State and defendant made their positions clear:

| | |
|---|---|
| Defense attorney: | Judge, before we proceed, it is the position of the defendant before the Court today, . . . that we do not contest the hospitalization, as requested by the State. We are prepared to hear the evidence; and the defendant is prepared to state that to the Court. If the Court so wishes. |
| State's attorney: | I would ask that the Court make that inquiry of the defendant. |
| Defense attorney: | But we wished to state that, before the hearing, to explain our position to **the Court.** |
| The Court: | Mr. Williams, it is my understanding from what your attorney said, it is your desire not to contest the hospitalization hearing? |
| Defendant: | Yes. |

The hearing ended a short while later on a similar note.

| | |
|---|---|
| Defense attorney: | Consistent with our prior position, Your Honor, we do not contest the order for hospitalization, as requested by the State's Attorney, in this matter. |

| | |
|---|---|
| The Court: | Let me make an inquiry. Do you have any witnesses, at this time? |
| Defense attorney: | We do not, Your Honor. |
| The Court: | Do you wish to . . . Do you, or your client, wish to make any argument, at this time? |
| Defense attorney: | We do not, Your Honor. |

Thus, the reasons for the delay in this case are clear: defendant's consent to the hospitalization, and the State's satisfaction with the arrangement. See A.O. 5, § 4. We turn, then, to the third factor, defendant's assertion, or lack thereof, of his right to a speedy trial.

## C. Assertion of the Right

Appellate review of defendant's speedy trial claim is hampered by defendant's admitted failure to assert in any manner this claim below, at least until his motion to dismiss in July of 1981. But see State v. Unwin, supra, 139 Vt. at 196, 424 A.2d at 257 (motion to dismiss is not the equivalent of a demand for an immediate trial since, as occurred in the case now at bar, defendant may so move without himself being prepared for trial). Therefore, we must review the record to determine whether defendant's pretrial actions, including his motion to dismiss, can for our purposes be considered as having raised a speedy trial claim.

However, we have before us a defense motion to strike portions of the supplemental printed case filed by the State. Twenty-one of the twenty-nine challenged documents do not come from the original papers and exhibits on file in the trial court. Rather, they are either part of the file of a separate, though related, case or come from the files of the state's attorney. Although this Court has authority to suspend the appellate rules for just cause under V.R.A.P. 2, defendant's motion is otherwise well grounded in that V.R.A.P. 10(a) clearly demands the exclusion of these twenty-one documents. Therefore, we must grant in part defendant's motion to strike* and dis-

---

* We deny the motion to strike regarding the following eight documents which are properly before this Court: (1) letter dated Sept. 18, 1980;

regard twenty-one of the State's twenty-nine submissions in its printed case. This Court has in the past discussed the appropriate route for admission of the evidence the State now seeks to proffer through the "back door" of a printed case.

> Docket entries or orders from another proceeding, however material, are not properly included in the record of this case on appeal. If important to the record in this case being tried, they may be introduced into evidence, or judicially noticed by the court pursuant to stipulation. Otherwise, they are not properly before the court.

*Pope* v. *Birchwood Manor Corp.*, 134 Vt. 577, 581, 367 A.2d 674, 677 (1976).

■ Here, however, the speedy trial claim was not raised below by defendant, the State, or the court on its own motion. Consequently, there was little opportunity or need for either side to tender the various excluded documents. Thus, the record in its present form provides scant illumination on the answers to now very important questions concerning why, after the initial determination of defendant's competency to stand trial in April of 1980, the case did not then proceed immediately to trial. The record which is properly before us suggests strongly the acquiescence of all parties to the treatment of defendant in Waterbury. Nevertheless, we note that putting the trial of three serious felony charges indefinitely on the back burner flirts with a variety of constitutional taboos. Were defendant able to show prejudice from the delay and the assertion of his rights below, this case would take a much different posture. As defendant concedes his failure to assert the right below, we turn then to the question of prejudice, the "most important factor to consider in analyzing speedy trial issues." *State* v. *Bristol*, 143 Vt. 245, 249, 465 A.2d 278, 280 (1983); *State* v. *Unwin, supra*, 139 Vt. at 197, 424 A.2d at 257–58.

---

(2) motion for disclosure dated Sept. 18, 1980; (3) notice of hearing dated Oct. 2, 1980; (4) notice of hearing dated Oct. 8, 1980; (5) letter dated Nov. 14, 1980; (6) letter dated Feb. 18, 1981; (7) letter dated Feb. 24, 1981; and (8) motion for independent psychiatric examination dated May 28, 1981.

## D. Prejudice to Defendant

Defendant rests his claim of prejudice on the shoulders of *State* v. *Franklin, supra,* which he reads as creating unrebutted "prima facie prejudice" where the State has not presented "good cause for an extension of time for trial . . . ." (quoting A.O. 5, § 3). But see *Barker* v. *Wingo, supra,* 407 U.S. at 521 (delay of trial "does not *per se* prejudice the accused's ability to defend himself"). *Franklin* involved a situation where the trial court spent more than thirteen months, from hearing to order, in deciding to deny a motion to suppress. *Franklin, supra,* 136 Vt. at 570–71, 396 A.2d at 139–40. The cause of the delay was that of the trial court; thus the total delay of eighteen months, *not brought about by defendant,* constituted prejudice as a matter of law. However, *Franklin* is inapposite to the case at bar. We note that portions of the supplemental printed case which are part of the file in this matter reveal that the state's attorney, and not counsel for defendant, took responsibility for keeping abreast of defendant's progress while at the Vermont State Hospital. Moreover, A.O. 5, § 3 is premised on a situation where the State is unprepared for trial. Here, in contrast, it was defendant who, in July and September of 1981, sought continuances. The record reveals that the State was prepared to go forward to trial and in fact urged the court to set a date certain to facilitate the attendance of an important out-of-state witness.

As defendant has failed to present any specific claims of prejudice, *State* v. *Unwin, supra,* 139 Vt. at 197, 424 A.2d at 257–58, we must agree with the State and the following language in *Barker:*

> [B]arring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right [to a speedy trial] on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial.

*Barker* v. *Wingo, supra,* 407 U.S. at 536. On this record, no prejudice appears and defendant's claimed error must fail.

## III.

Defendant's final claim of error is that the trial court abused

its discretion in denying defendant's motion for a mistrial after a psychiatrist called by the State allegedly interjected prejudicial information about defendant's possible discharge from the hospital.

The transcript reveals that a nonresponsive answer to a question by the state's attorney immediately drew an objection from defendant. Following a bench conference in which both the State and defendant agreed that a discussion of defendant's attempts to get out of Waterbury, by demanding a review of his treatment, would be prejudicial, the State was allowed to ask leading questions to steer his witness away from such an area. However, on cross-examination, defense counsel reopened that area of inquiry. The expert witness answered a question by making an oblique reference to the prejudicial material, whereupon defendant immediately objected to the answer that he received to his own question. No other curative action was ever requested by defendant.

At the conclusion of the expert's testimony, defendant made a motion for mistrial. The trial court found that (1) the prejudicial answer came in because of a poorly framed question by the defense attorney, (2) no motion to strike or request for a limiting instruction was timely made, and (3) the court had specifically warned both attorneys to avoid that area in the testimony, a warning defendant disregarded at his own peril.

We cannot say that the trial court abused its discretion in so ruling.

*Judgment affirmed.*