NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 6

No. 2015-224

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Bennington Unit, |
| | Criminal Division |
| | |
| Lamar Scales | September Term, 2016 |

David A. Howard, J.

Alexander Burke, Bennington County Deputy State's Attorney, Bennington, for
  Plaintiff-Appellee.

Matthew Valerio, Defender General, and Rebecca Turner, Appellate Defender, Montpelier, for
  Defendant-Appellant.


PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1. **SKOGLUND, J.** In September 2014, defendant was tried and convicted of three felony counts of lewd and lascivious conduct with a child that occurred between June 1, 2004 and June 1, 2006. He appeals his convictions, arguing that the trial court erred in admitting consciousness-of-guilt evidence and then failing to give a limiting instruction on the use of that evidence and that the prosecutor's closing argument violated the "golden rule" by asking the jurors to put themselves in the position of a party—here, the purported victim. We reverse and remand.

¶ 2. K.S., the child complainant, was twelve years old when she disclosed to her mother that mother's former boyfriend, defendant, had touched her on multiple occasions when she was between four and six years old. When asked why she waited several years to disclose this touching,

K.S. testified she waited because she did not want to put any more pressure or stress on her mother. The disclosure came during an argument on the phone with her mother, who was upset that K.S. had gone to a basketball game when she was supposed to be attending math tutoring with her aunt. The following day, K.S. and her mother went to the police station to be interviewed and give a written statement.

¶ 3. On February 28, 2013, the State filed an information with the court charging defendant with three counts of lewd and lascivious conduct with a child and applied for an arrest warrant. On March 1, the court issued the warrant requested. Defendant was arrested on the warrant on September 24, 2013, in Pennsylvania, and subsequently arraigned in Vermont on the charges. In October 2013, the State filed a Vermont Rule of Criminal Procedure 26 notice of its intent to offer, in its case in chief, evidence of defendant's behavior when arrested, arguing it was admissible as evidence of guilt. Defendant filed an objection, arguing that the encounter with the Pennsylvania trooper was seven years removed from the date of the alleged charged offenses, did not involve false information, and did not mislead.

¶ 4. After a hearing on the Rule 26 notice, the trial court issued an order allowing the testimony of the Pennsylvania state trooper who effectuated defendant's arrest, finding that the probative value of the evidence outweighed any prejudice to defendant. It is this so-called consciousness-of-guilt evidence that defendant challenges on appeal.

¶ 5. In September 2013, Trooper Michael Brown of the Pennsylvania State Police served the arrest warrant at the home where defendant was believed to be living. When defendant answered the door, the trooper asked him if he was Lamar Scales. Defendant identified himself as Shahid Nur and provided the trooper with a credit or debit card with that name on it. The trooper then told him he would be fingerprinted to confirm identification, and a woman present in the apartment told defendant to just tell the officer who he was. Defendant then said that he was Lamar Scales but that he had changed his name to Shahid Nur.

2

¶ 6. Defendant argues the court erred in admitting the testimony of the Pennsylvania trooper for two reasons[1]: first, there was no foundation that his response to the trooper was probative of consciousness of guilt as to the specific charges here, and second, because it was unduly prejudicial. We agree.

¶ 7. This Court has long recognized that so-called consciousness-of-guilt evidence has "little probative value," State v. Unwin, 139 Vt. 186, 193, 424 A.2d 251, 255 (1980), even when the prosecutor can show that it is relevant to a "legitimate issue" other than propensity to commit the crime charged. State v. Winter, 162 Vt. 388, 392, 648 A.2d 624, 626 (1994) (quotation omitted); see State v. Giroux, 151 Vt. 361, 366, 561 A.2d 403, 406 (1989) (upholding jury instruction that flight has "very, very limited probative value").

¶ 8. We have addressed this issue most often when evidence of flight is offered as consciousness of guilt. In State v. Perrillo, we called such evidence inherently ambiguous and dependent upon multiple inferential steps:

> The probative value of evidence of flight as circumstantial evidence of guilt depends upon the confidence placed on four inferential steps: "from the defendant's behavior to flight[,] . . . from flight to consciousness of guilt[,] . . . from consciousness of guilt to consciousness of guilt concerning the crime charged[,] . . . from consciousness of guilt concerning the crime charged to actual guilt of the crime charged."

---

[1] At trial, the defense sought to offer testimony from another former boyfriend of the mother to provide another reason defendant may have identified himself as Shahid Nur that was consistent with his innocence and not indicative of consciousness of guilt. Because we hold that the consciousness-of-guilt evidence should not have been allowed and that a limiting instruction should have been given, we do not address defendant's challenge to the court's decision limiting the scope of the other boyfriend's testimony.

Similarly, defendant claims that the court should not have allowed the State to provide a supplemental evidentiary fact as rebuttal evidence after both sides rested their cases. Although that fact—the date defendant's warrant issued in Vermont—does not appear to rebut or contradict any evidence offered by the defense, it does not affect our decision that the admission of the consciousness-of-guilt evidence was improper, and we will not use this case to delve into the propriety of the court's offering an evidentiary fact on behalf of the State.

162 Vt. 566, 570, 649 A.2d 1031, 1034 (1994) (quoting United States v. Myers, 550 F.2d 1036, 1049 (5th Cir. 1977)).

¶ 9. The use of evidence of flight has been criticized on the grounds that the second and fourth inferences are not supported by common experience. Myers, 550 F.2d at 1049. In Perrillo, this Court found that the lack of support for those inferences makes "evidence of flight or related conduct 'only marginally probative as to the ultimate issue of guilt or innocence.' " 162 Vt. at 570, 649 A.2d at 1034 (quoting United States v. Robinson, 475 F.2d 376, 384 (D.C. Cir. 1973)) (commenting on jury instruction and finding it "adequately explain[ed] the conflicting motives that may lead an innocent man to flight, and highlights the danger of drawing an adverse inference from such evidence").

¶ 10. The State claimed that "[l]ying about his identity and providing an alias to the police" were admissible as evidence of guilt. This Court has held:

> "The State has the burden to show precisely how the proffered evidence is relevant to the theory advanced, how the issue to which it is addressed is related to the disputed elements in the case, and how the probative value of the evidence is not substantially outweighed by its prejudicial effect."

State v. Lipka, 174 Vt. 377, 391, 817 A.2d 27, 38-39 (2002) (quoting Winter, 162 Vt. at 393, 648 A.2d at 627). Here, by no stretch of the imagination can the offered evidence—defendant's identification of himself as Shahid Nur—be considered as evidence of guilt or an attempt to evade detection.

¶ 11. First, giving the police his alternate name is highly ambiguous conduct that does not demonstrate that defendant was attempting to elude the police, particularly as there were other reasons to explain his identification of himself as Shahid Nur. Police records from as early as 2011 show that defendant was also known to law enforcement as Shahid Nur. Even K.S. confirmed at trial that she knew defendant used that name. Therefore, the first inferential step cannot be made.

4

¶ 12. Second, the evidence does not support the second inference that flight shows consciousness of guilt. Defendant identified himself using a name that he apparently used consistently as evidenced by the identification he provided the Pennsylvania officer and, as such, cannot be seen as consciousness of guilt.

¶ 13. The third inference that defendant's consciousness of guilt relates to this crime fails as well. There was scant evidence to show that when defendant identified himself as Shahid Nur he was aware the warrant being served in Pennsylvania was connected to charges filed in Vermont. As noted in United States v. Howze, where there is a substantial time lag between the time of the crime charged and the proffered evidence, "defendant's knowledge that he is being sought for the crime becomes an increasingly important factor." 668 F.2d 322, 325 (7th Cir. 1982) (quotation omitted). The court went on: "[W]hen there is no immediacy between the flight and the crime, the court must be certain there is evidence that a defendant knows he is being sought for the specific crime charged and not some other crime or event." Id.; see also United States v. Harrison, 585 F.3d 1155, 1159 (9th Cir. 2009) ("Courts consider whether the defendant knew the police suspected him of a particular crime." (quotation omitted)). The encounter with the Pennsylvania trooper occurred seven years after the date of the charged offense. According to the testimony of the trooper, when defendant identified himself as Shahid Nur, the officer had not made any mention of any crime, especially one from another jurisdiction—Vermont.

¶ 14. Finally, there was no connection between defendant's identification of himself as Shahid Nur and any disputed elements in the case. Without any showing that defendant's response to the trooper had any bearing on this case, the incident amounted to impermissible evidence offered to suggest defendant knew he was guilty of the crime charged. With no relevance to the crimes charged, it was highly prejudicial.

5

¶ 15. The evidence labeled as consciousness-of-guilt evidence should not have been allowed.[2] This error was compounded by the court's refusal to give the limiting instruction requested by defense. The limiting instruction requested by defense was proper under the case law and should have been given.

¶ 16. Specifically, defendant asked the court to instruct that consciousness-of-guilt evidence could not sustain a guilty verdict on its own. Giroux, 151 Vt. at 366, 561 A.2d at 406 (upholding instruction that "evidence of flight has 'very, very limited probative value,' is by itself not sufficient to support a finding of guilt, and can mean 'very innocent things that are totally consistent with the concept of being not guilty [like] fear, confusion [and] ignorance' "); Unwin, 139 Vt. at 193-94, 424 A.2d at 255-56 (similar limiting instruction).

¶ 17. Defendant requested an instruction that included several cautions and more detailed instruction about the weight and value of such evidence. Specifically, defendant asked the court to instruct the jury that "consciousness of guilt in and of itself is insufficient to sustain a conviction," that "evidence of flight is generally considered to have little probative value," and that "there are many reasons that a person might [give a false name], having nothing to with guilt." The court denied the request, stating that the proposed limiting instruction was one that could apply to "almost all the evidence."

¶ 18. Instead, the court instructed the jury on the consciousness of guilt evidence that, inter alia:

> That evidence was admitted solely for the limited purpose of describing why the Pennsylvania officers were dealing with Mr. Scales. The use of a different name is not by itself illegal. The evidence concerning this was admitted for you to consider whether it indicated any consciousness of guilt by defendant when

---

[2] To be clear, our decision does not preclude the State from introducing consciousness-of-guilt evidence in the future. We hold only that in these circumstances, where the consciousness-of-guilt evidence was remote in time from the alleged crime and negligible evidence demonstrated defendant's knowledge of the outstanding Vermont warrant, the evidence lacked probative value in connection with the crime.

confronted by the Pennsylvania officers. You should give it what weight you find it deserves, if any, after weighing all the circumstances of the case.

¶ 19. We have held that evidence of flight is not sufficient by itself to support a conviction. Unwin, 139 Vt. at 193, 424 A.2d at 255. In Unwin we approved an instruction that informed the jury that, should they find evidence of flight in the case, "it does not raise any presumption of guilt because there are many reasons for such conduct including fear, ignorance, confusion or the like, which are consistent with the claim of innocence." Id. 139 Vt. at 193, 424 A.2d at 255-56. Defendant's objection was timely renewed. Such a limiting instruction should be given when consciousness-of-guilt evidence is properly admitted in a case. The refusal of the court to give the instruction created further prejudice from the admission of the evidence.

¶ 20. Because the admission of consciousness-of-guilt evidence was error, the State must meet its burden of establishing that the error was harmless. State v. Covell, 146 Vt. 338, 342, 503 A.2d 542, 544 (1985). "For the error to be harmless, the reviewing court must find beyond a reasonable doubt that the jury would have returned a guilty verdict regardless of the error." State v. Oscarson, 2004 VT 4, ¶ 30, 176 Vt. 176, 845 A.2d 337. "When conducting a harmless-error analysis to determine whether the jury would have convicted without the offending evidence, we consider the extent to which the offending evidence was inculpatory, whether it was cumulative or duplicative of other evidence, and how prominent it was at trial." State v. Mumley, 2009 VT 48, ¶ 20, 186 Vt. 52, 978 A.2d 6.

¶ 21. The State began its case with the consciousness-of-guilt evidence. The State's first witness was the Pennsylvania trooper who served the arrest warrant and who testified as to defendant's use of the name Shahid Nur. As the defense repeatedly argued, defendant had had multiple arrests, failures to appear, and at least one conviction for unrelated acts in the interim period between the alleged lewd and lascivious acts in Vermont and the appearance of the Pennsylvania troopers at his door. Thus, the defense posited that defendant could have been

7

reacting for any number of reasons other than consciousness of guilt for the charged crime. That seems obvious. Defendant's response to the Pennsylvania trooper had no bearing on this case. This evidence was patently irrelevant and prejudicial.

¶ 22. Admission of same cannot be said to be harmless. The court refused to give the requested, proper limiting instruction. Cf. Unwin, 139 Vt. at 143, 424 A.2d at 256 (upholding introduction of consciousness-of-guilt evidence when "court's instructions on flight were carefully limited, and they did not encourage the jury to give too much weight to the fact of the defendant's flight"). Further, without the so-called consciousness-of-guilt evidence presented to the jury, the only substantive evidence came from the testimony of a twelve-year old girl about events that occurred more than six years prior and whose testimony was, at best, inconsistent. See Myers, 550 F.2d at 1049 (concluding that, where evidence was evenly balanced, admission of consciousness-of-guilt evidence was not harmless).

¶ 23. The admission of the consciousness-of-guilt evidence was error, and that error was not harmless beyond a reasonable doubt.

¶ 24. Finally, defendant challenges the prosecutor's closing arguments. Twice in her closing, the prosecutor referred to the defense as mere "smoke and mirrors." Defense counsel objected to the second, but not the first of these statements. This Court has previously disapproved of a prosecutor's closing argument in which remarks impugned the defense. In State v. Francis, we said, "Labeling the defense summation as a 'smoke screen' mischaracterized what we find to be reasonable and relevant arguments." 151 Vt. 296, 300, 561 A.2d 392, 394 (1989); see also State v. Hughes, 158 Vt. 398, 402, 610 A.2d 559, 561 (1992). The prosecutor's description of the defense was not proper, but without the "golden rule" violation described below, would not be grounds for reversal. See Francis, 151 Vt. at 300; 561 A.2d at 394 (finding that "smoke screen" comment was improper but declining to reverse on plain error).

8

¶ 25. The prosecutor went on to point to facts outside the record, asking jurors to recall that, in voir dire, they said they could return a guilty verdict on the word of a child alone. Defense counsel objected, arguing that the State should only be talking about its evidence. The court found no error even though it confirmed that the prosecutor was relying on statements made prior to trial in voir dire and not facts in evidence. Defendant argues that the effect of the State's argument was to suggest jurors had promised the State a guilty verdict if the word of a child was delivered. As with the prosecutor's "smoke and mirrors" comment, this request verges on impropriety but would not constitute reversible error absent the "golden rule" violation. See State v. Thompson, 832 A.2d 626, 650 (Conn. 2003) (distinguishing prosecutor reminding jury of its oath from prosecutor's suggestion that "the jury decide the issue on a basis other than the evidence and the applicable law").

¶ 26. But the prosecutor did violate the "golden rule" by asking the jurors to put themselves in the place of the child complainant:

> As adults, no one would want to ever come into court . . . and say, okay, I'm going to talk now about my first sexual experience. . . . . Imagine how difficult it would be for an adult, and then put yourself in the eyes of twelve year-old child, and how difficult and challenging it would have been for her, and for her to come here, as well.

¶ 27. Finally, the prosecutor replayed the audio of K.S. and then told jurors: "That's the word of a child in this case, and in this case, with all the corroborating evidence, it's enough," to find defendant guilty on all three counts. There was no objection to this portion of prosecutor's closing argument.

¶ 28. Vermont has recognized the impropriety of an appeal to jurors to put themselves in the place of the victim. As the D.C. Circuit Court of Appeals recently explained: "A golden rule argument—which asks 'jurors to place themselves in the position of a party'—is 'universally condemned' because it encourages the jury to depart from neutrality and to decide the case on the

9

basis of personal interest and bias rather than on evidence." Caudle v. District of Columbia, 707 F.3d 354, 359 (D.C. Cir. 2013) (citations omitted).

¶ 29. "The longstanding rule in Vermont is that counsel should confine argument to the evidence of the case and inferences properly drawn from it." State v. Lapham, 135 Vt. 393, 406, 377 A.2d 249, 257 (1977); see also State v. Rehkop, 2006 VT 72, ¶ 35, 180 Vt. 228, 908 A.2d 488 (noting rule that counsel must confine their arguments to evidence of case). This obligation is particularly essential for prosecutors as they have a "corresponding duty to refrain from improper methods . . . and to guard against conduct unintentionally trespassing the bounds of propriety." Lapham, 135 Vt. at 406, 377 A.2d at 257.

¶ 30. The prosecutor's repeated improper remarks showed "a studied purpose to arouse the prejudices of the jury." Id. at 407, 377 A.2d at 257. This Court has condemned arguments made to the jury in which the prosecutor makes inflammatory statements or appeals to the sympathies of the jury. See State v. Bubar, 146 Vt. 398, 403, 505 A.2d 1197, 1200 (1985). This rule is well established. More than seventy years ago in Duchaine v. Ray, we noted that counsel's urging of jurors to place themselves in the victim's shoes was a "highly improper" and a "lamentable departure" from the rule against appeals to jurors' prejudice. 110 Vt. 313, 321, 6 A.2d 28, 32 (1939). As in State v. Madigan, the prosecutor's statements "exceeded the bounds of fair and temperate discussion, circumscribed by the evidence and inferences properly drawn therefrom." 2015 VT 59, ¶ 31, 199 Vt. 211, 122 A.3d 517.

Reversed and remanded.

FOR THE COURT:

_____

Associate Justice