# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 14, 2012          Decided February 15, 2013

No. 11-7107

FRAZIER CAUDLE ET AL.,
APPELLEES

v.

DISTRICT OF COLUMBIA,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-00205)

*Carl J. Schifferle*, Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for the appellant. *Irvin B. Nathan*, Attorney General, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor, were on brief.

*Jennifer I. Klar* argued the cause for the appellees. *Megan Cacace* and *John P. Relman* were on brief.

Before: HENDERSON and ROGERS, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Appellees Frazier Caudle, Nikeith Goins, William James, Sholanda Miller and Donald Smalls (collectively, appellees) sued the District of Columbia (District), their employer, for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (Title VII). During closing argument, their counsel made four inappropriate statements—the last three of which occurred *after* the district court had sustained objections to the earlier iterations. The jury found in favor of the appellees and awarded compensatory damages to each except Miller. The district court subsequently denied the District's post-trial motions, including those seeking a new trial and/or remittitur. The District argues on appeal, *inter alia*, that it is entitled to a new trial because of the improper closing argument. We agree and reverse the district court's judgment, remanding for further proceedings consistent with this opinion.[1]

## I.

In 2005, the appellees worked for the First District of the District's Metropolitan Police Department (MPD). Goins worked in the MPD's Auto Theft Unit (ATU) and the other appellees (FMU appellees) worked in MPD's Focus Mission Unit (FMU). At that time, Commander Diane Groomes (Groomes) oversaw MPD's First District.

---

[1] The District also argued that the district court erred (1) in not granting judgment as a matter of law on Goins's retaliation claim because Goins did not engage in protected activity known to his supervisor at the time he allegedly suffered retaliation; (2) in not granting a new trial because of unduly harsh spoliation sanctions it imposed on the District and (3) in not granting a new trial because it improperly excluded certain evidence that the District treated the appellees favorably in other respects. We do not reach these issues.

Beginning in late 2005, Lieutenant Ronald Wilkins (Wilkins) became the appellees' supervisor. The appellees began to believe that Wilkins was discriminating against them on the basis of race. On June 16, 2006,[2] the FMU appellees sent an anonymous letter to Groomes complaining about Wilkins's alleged discrimination. On June 20, Groomes called a meeting of all FMU officers and asked whether they could "work together." Joint Appendix (JA) 270, 624. The meeting was tense and, afterward, FMU officers generally had trouble getting along. Around the same time, Goins (who did not join in the June 16 anonymous letter) complained to Wilkins about "unfair treatment." JA 459, 477-80.

By the end of July or the beginning of August, Groomes decided to reorganize FMU and ATU. On August 14 she posted vacancy announcements for FMU and ATU, instructing applicants to apply by August 18. Additionally, officers who wished to stay in FMU or ATU had to reapply to keep their jobs. Appellees Caudle, James, Smalls and Goins[3] all reapplied.[4]

On August 24, the appellees drafted and signed a complaint that alleged retaliation and discrimination by the MPD based on, *inter alia*, the August 14 vacancy announcements. They sent the letter to the District Office of

---

[2] Unless otherwise indicated, all dates are in 2006.

[3] The parties dispute whether Goins applied to FMU or ATU.

[4] Miller did not submit a reapplication. She had sought a transfer from FMU to patrol so she could work a day shift. She was transferred to patrol but not to the day shift. By the time she was notified of her transfer, it was too late for her to apply to stay with FMU.

Human Rights and to the United States Department of Justice (DOJ) but did not inform anyone at the MPD about it.

On September 27, Groomes posted her selections for FMU and ATU officers. Instead of being assigned to their former positions, Goins, James and Smalls were assigned to a new Intel Unit,[5] while Caudle and Miller were assigned to patrol. Smalls worked in the Intel Unit from approximately October 2006 until February 2008, when he was promoted to sergeant and left the Intel Unit. Eventually, the MPD disbanded the Intel Unit and assigned Goins and James to patrol. On February 5, 2008—after filing charges of retaliation with the United States Equal Employment Opportunity Commission and the District Office of Human Rights—they sued the District.

At the end of a three-week trial and during closing arguments, the appellees' counsel made four statements to which the District objected and now challenges on appeal. First, she stated:

> You heard [the] plaintiffs explain that they felt humiliated, berated, and isolated at the [June 20] meeting listening to their supervisors and peers comment on their discrimination complaint. Now, ask yourself, would *you* hesitate to speak up if *you* knew that speaking

---

[5] Before posting her decision, Groomes offered Goins, James and Smalls positions in the Intel Unit, which they accepted (they testified that they did so only because Groomes told them they would not be returning to their former positions). The parties dispute whether assignment to the Intel Unit was a demotion or a promotion.

up would mean that *your* boss would call a meeting with *your* entire office . . . .

JA 589 (emphases added). The District objected and the trial court sustained the objection but denied its request for a curative instruction.

Almost immediately after the court sustained the first objection, the appellees' counsel stated: "Ask yourself this: Wouldn't *you* think twice about complaining about workplace discrimination . . . ." JA 590 (emphasis added). Once again, the court sustained the District's objection but did not give a curative instruction.

The appellees' counsel then argued:

> Now, in the end it is your job to determine how to make [the] plaintiffs whole for what they have had to endure. As you make those decisions, we ask yourselves [sic] to *put yourselves in the plaintiffs' shoes*. What would it do to *you* to have *your* complaint broadcast to *your* entire office, to be the only one excluded . . . .

JA 591 (emphases added). After the District objected, the district court sustained the objection and instructed the jury: "Ladies and gentlemen of the jury, this is what is called a golden rule argument, asking you to place yourself in the position of the plaintiffs. You should not consider such an argument." JA 591-92.

Finally—shortly after the district court sustained the last objection—the appellees' counsel concluded:

> By protecting plaintiffs' right to complain about unlawful conduct without reprisal, you preserve the rights *not just of plaintiffs but of*

> *everyone*. By ensuring that plaintiffs are made whole for what they have endured, you ensure that *others will be free to exercise their rights without fear*. Yours is an important job and we trust that you will *[do what] is right and ensure that justice is done*.

JA 593 (emphases added).[6]

The jury returned verdicts for the appellees and awarded a total of $900,000 in compensatory damages; $250,000 to Smalls, $250,000 to James, $200,000 to Caudle, $200,000 to Goins and $0 to Miller. The court then awarded back pay and prejudgment interest in the amount of $14,399 to Smalls, $51,666 to James, $36,454 to Caudle, $36,785 to Goins and $0 to Miller. The court also enjoined the District from engaging in further retaliation and awarded the appellees their litigation costs.

## II.

The district court "may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). We review the district court's denial of a new trial motion for abuse of discretion. *See Daskalea v. District of Columbia*, 227 F.3d 433, 443 (D.C. Cir. 2000). A new trial is unwarranted if

---

[6] The District did not contemporaneously object to the fourth statement, nor mention the fourth statement in its post-trial motion, although it did raise the issue when it moved for a mistrial immediately after the appellees' closing argument. We conclude that the fourth statement is properly before us in view of the three earlier objections, the thrust of the entire closing argument and the contemporaneous mistrial motion.

the trial error is harmless. *See United States v. Whitmore*, 359 F.3d 609, 624 (D.C. Cir. 2004).

**A.**

A new trial may be granted based on improper jury argument. *See, e.g.*, *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871, 897-98 (D.C. Cir. 2010) (per curiam) ("[A]rguments to the jury about a defendant's wealth are grounds for new trial."); *see also Wash. Annapolis Hotel Co. v. Riddle*, 171 F.2d 732, 740 (D.C. Cir. 1948)). The jury may not return a verdict based on personal interest, bias or prejudice and an argument asking it to do so is improper. *See, e.g.*, *Miller*, 608 F.3d at 897-98 (references to defendant's wealth improper because "[t]he only way the information could have affected the jury was to prejudice it"); *Riddle*, 171 F.2d at 740 (jury argument "that justice should be administered unequally as between the rich and the poor" warranted mistrial).

The appellees' counsel made four inappropriate statements during her closing argument. The first three are "golden rule" arguments. A golden rule argument—which asks "jurors to place themselves in the position of a party," *see, e.g.*, *Ins. Co. of N. Am. v. U.S. Gypsum Co.*, 870 F.2d 148, 154 (4th Cir. 1989)—is "universally condemned because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on evidence." *Granfield v. CSX Transp., Inc.*, 597 F.3d 474, 491 (1st Cir. 2010) (quotation marks omitted); *see also Arnold v. E. Air Lines, Inc.*, 681 F.2d 186, 199 (4th Cir. 1982) ("The Golden Rule and sympathy appeals are . . . obviously improper arguments . . . . Having no legal relevance to any of the real issues, they were *per se* objectionable . . . ."); *Har-Pen Truck Lines, Inc. v. Mills*, 378 F.2d 705, 714 (5th Cir. 1967) ("The real danger is that the sympathy and the feelings

of the jury will be encouraged and aroused so that the jury will decide the case and award damages out of relation to actual fault and actual damage."). For example, it is impermissible (1) to ask jurors how much the loss of the use of their legs would mean to them, *Leathers v. Gen. Motors Corp.*, 546 F.2d 1083, 1085-86 (4th Cir. 1976); (2) to tell jurors "do unto others as you would have them do unto you," *Klotz v. Sears, Roebuck & Co.*, 267 F.2d 53, 54 (7th Cir. 1959); or (3) to tell jurors, in a reverse golden rule argument, "I don't want to ask you to place yourself in [the plaintiff's] position," *Loose v. Offshore Navigation, Inc.*, 670 F.2d 493, 496 (5th Cir. 1982).

While all circuits that have considered the issue have held a golden rule argument improper if made with respect to damages, there appears to be, as the district court noted, a circuit split regarding whether such argument is improper if made with respect to liability. At least four circuits have found such a golden rule argument permissible. *See, e.g.*, *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1071 n.3 (11th Cir. 1996); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1289 (2d Cir. 1990); *Shultz v. Rice*, 809 F.2d 643, 651-52 (10th Cir. 1986); *Burrage v. Harrell*, 537 F.2d 837, 839 (5th Cir. 1976). On the other hand, the Third Circuit has rejected the liability-damages distinction. *Edwards v. City of Phila.*, 860 F.2d 568, 574 n.6 (3d Cir. 1988) ("We see no rational basis for a rule that proscribes the 'Golden Rule' argument when a plaintiff argues damages, but permits it when the defendant argues liability . . . . [because the] same concerns are present in both situations—the creation of undue sympathy and emotion" (quotation marks and brackets omitted)); *see also Ins. Co. of N. Am., Inc.*, 870 F.2d at 154 (suggesting but not holding that defense counsel's opening statement—"asking the jurors to consider whether any of them would like to be accused of fraud based upon the evidence which they were about to hear"—was improper);

*Joan W. v. City of Chicago*, 771 F.2d 1020, 1022 (7th Cir. 1985) ("[The Plaintiff] urges that the Golden Rule argument is not objectionable when it refers only to the assessment of credibility. There is no reason for such a distinction because the jury's departure from its neutral role is equally inappropriate regardless of the issue at stake.").

We join our sister circuits and hold that a golden rule argument is improper and may thus serve as the basis for a new trial.[7] Further, we do not recognize a *per se* distinction between a golden rule argument relating to damages and the same argument regarding liability. Courts forbid golden rule arguments to prevent the jury from deciding a case based on inappropriate considerations such as emotion. *See, e.g.*, *Stokes v. Delcambre*, 710 F.2d 1120, 1128 (5th Cir. 1983) ("The rule's purpose is to reduce the risk of a jury decision based on emotion rather than trial evidence."). It is no more appropriate for a jury to decide a defendant's liability *vel non* based on an improper consideration than to use the same consideration to determine damages. Accordingly, we agree with the Third Circuit that a golden rule argument made with respect to liability as well as damages is impermissible.

We conclude that the appellees' counsel's first three above-quoted statements are golden rule arguments. The third statement, addressed to damages, is plainly improper; she asked the jury to "put yourselves in the plaintiffs' shoes" in "determin[ing] how to make plaintiffs whole." JA 591. This is a quintessential invocation of the golden rule and the district court was correct to sustain the objection and instruct the jury

---

[7] We explain *infra* that the district court may grant a new trial only if the golden rule argument affects substantial rights, *see* Fed. R. Civ. P. 61.

to disregard it. While the propriety of the first two statements is a closer question, we nonetheless conclude that they also constitute golden rule arguments addressing liability. The appellees' counsel stated, *inter alia*, "would *you* hesitate to speak up if *you* knew that speaking up would mean that your boss would call a meeting," JA 589 (emphases added), and "[w]ouldn't *you* think twice about complaining about workplace discrimination." JA 590 (emphasis added). The appellees argue that the statements are permissible because they explain the legal standard for retaliation under *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006). But the *Burlington Northern* standard—which forbids "employer actions that would have been materially adverse to a *reasonable* employee"—is an objective standard. 548 U.S. at 57 (emphasis added). Because it is objective, "[i]t avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." *Id.* at 68-69. As the district court necessarily found in sustaining the objections, however, the appellees' counsel's statements did not describe an objective standard. Rather, they asked the jurors to decide how each of them—not a reasonable person—would feel if he were in the appellees' situation.

The fourth statement, while not a golden rule argument, is also inappropriate. The appellees' counsel stated:

> By protecting plaintiffs' right to complain about unlawful conduct without reprisal, you preserve the rights not just of plaintiffs but of everyone. By ensuring that plaintiffs are made whole for what they have endured, you ensure that others will be free to exercise their rights without fear. Yours is an important job and we trust that you will [do what] is right and ensure that justice is done.

JA 593. This is a so-called "send a message" argument that, alone, might not be grounds for reversal, *Carter v. District of Columbia*, 795 F.2d 116, 138–39 (D.C. Cir. 1986). Here, given the fact that the appellees' counsel made this argument after the district court had sustained *three* objections to golden rule arguments—her send a message argument was also inappropriate because, like the golden rule arguments, it diverted the jury's attention from its duty to decide the case based on the facts and the law instead of emotion, personal interest or bias.

We next address whether the improper statements warrant a new trial.

**B.**

The district court concluded that a new trial was unnecessary because "any minimal prejudice that might have arisen from counsel's comments" was cured by the fact that (1) the court sustained prompt objections to the three golden rule arguments; (2) after the third iteration, the court instructed the jurors to disregard it and (3) in its general jury instructions, the court directed the jurors to "decide the facts of this case only from a fair evaluation of all of the evidence without prejudice, sympathy, fear, favor, or public opinion." *Caudle v. District of Columbia*, 804 F. Supp. 2d 32, 53 (D.D.C. 2011) (quotation marks omitted).

In determining whether a new trial is warranted, we must determine whether the error is harmless. We do so by

> measur[ing] the harm in terms of whether the error had substantial and injurious effect or influence in determining the jury's verdict, not merely whether the record evidence is sufficient absent the error to warrant [the jury verdict]. Consequently, an evidentiary error is

> harmless if (1) the case is not close, (2) the issue not central, or (3) effective steps were taken to mitigate the effects of the error.

*Ashcraft & Gerel v. Coady*, 244 F.3d 948, 953 (D.C. Cir. 2001) (quotation marks and citations omitted). The appellees' counsel's improper argument was not harmless. First, this *was* a close case. Like many retaliation cases, it hinged on a determination of motive based on circumstantial evidence. Their claims also had serious evidentiary weaknesses that the jury resolved in their favor.

For example, at trial, the appellees presented two alternative theories to support Goins (to whom the jury awarded $236,785) having engaged in protected activity that was known to Groomes at the time she allegedly retaliated against him. *See Talavera v. Shah*, 638 F.3d 303, 313 (D.C. Cir. 2011) (retaliation claim fails if employee does not engage in protected activity known to supervisor). First, they argued that Goins engaged in protected activity by complaining about "unfair treatment" to Wilkins; however, Goins's testimony on this point was equivocal at best. Goins stated that he complained to Wilkins by "tell[ing] him certain things I didn't agree with . . . . [w]henever I felt unfair treatment." JA 459. He admitted, however, that he never referred to racial discrimination. On cross-examination, the District's counsel asked Goins: "[Y]ou never complained of unfair treatment based upon your race, correct?" to which he responded: "I never said directly, but, indirectly, within my complaint, it was voiced, yes, sir." JA 478. When pressed on the point, he admitted "I might not have said it directly that it was racial treatment." JA 479. Goins also stated that he complained about "unfair treatment" at staff meetings, but the District's counsel's cross-examination confirmed that he "never said . . . that race discrimination was at play" or that "white officers

are being treated one way and black officers are being treated another way." JA 479-80.

Alternatively, the appellees argued that Groomes knew—at the time she allegedly retaliated against Goins—that Goins engaged in protected activity by signing the August 24, 2006 complaint. The appellees testified, however, that they did not send the August 24 complaint to the MPD or inform anyone at the MPD about the letter; rather, they sent the letter to DOJ and the District Office of Human Rights. Groomes and others testified that they were unaware of the letter at the time of the alleged retaliation.

Furthermore, despite the fact that the appellees' damages evidence was tenuous at best, the jury awarded almost one million dollars. *See Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 278 (5th Cir. 1998) ("That the awards were improperly influenced by passion and prejudice is indicated by their size.").[8]

---

[8] The damages evidence was less than compelling. Smalls—who was ultimately *promoted* to sergeant—testified that his "blood pressure went up," he "couldn't sleep" and the events "just consumed [his] thoughts." JA 550. James testified that he cried, felt depressed and humiliated and had "headaches, stomach pains, [and] verbal altercations with [his] wife." JA 140. Caudle testified that "certain colleagues [ ] stare at me funny and some of them . . . question your work ethic," he was "humiliated" and "[i]t was difficult trying to rest, you know, the more you think about it—you get headaches, but it was very hard, though." JA 515; *see also* JA 524 (Caudle admitting he never saw a doctor about headaches and lost sleep). Goins testified he got "a lot of headaches," "went to [his] doctor . . . to make sure there wasn't nothing besides maybe just stress" and that talking about the case "is like opening up an old wound." JA 473-74; *see also* JA 489-90 (Goins admitting he

Second, the appellees' counsel's comments went to central issues in the case. *See Carter*, 795 F.2d at 132 (issue central because "whether the defendants engaged in misconduct with respect to their arrest of the plaintiffs was . . . the overarching question in the case"). There was only one theory of liability in this case—retaliation—and the first two comments were directed at a contested element of retaliation. The third comment went to damages—central to the verdict—and the fourth comment went to both damages and liability.

Third, while the district court attempted to mitigate the prejudice by sustaining objections and giving a curative instruction, we do not believe the prejudice was so easily removed. This is not a case in which counsel made a *single* misstatement and ceased further misstatements after the district court sustained an objection. *Compare Stokes*, 710 F.2d at 1128 (no plain error because "no repeated impermissible use of the argument technique"), *with Whitehead*, 163 F.3d at 277-78 (multiple improper arguments, including golden rule argument, warranted new trial). Instead, the appellees' counsel made *four* impermissible statements— each escalating from the last—three of which came after the district court had sustained the District's objections. In a similar context, we stated:

> Evidence need not be reinforced and reiterated again and again for it to be prejudicial enough to warrant a new trial. Here, it is enough that there were several inappropriate references to multiple different companies' wealth, especially given that the Government's counsel

had headaches periodically for non-work reasons). Nevertheless, the issue of damages is not before us.

> emphasized the wealth of the Harbert companies in his closing statement and insinuated that the money would be in better hands if it were taken from the defendants.

*Miller*, 608 F.3d at 898.

Nor do we agree that the district court's general jury instruction—to decide the case without prejudice, sympathy, fear, favor or public opinion—eliminated the unfair prejudice to the District caused by the appellees' counsel. This instruction is given in virtually every trial; it was not in any way directed at her argument. *See, e.g.*, 3 KEVIN F. O'MALLEY ET AL., FEDERAL JURY PRACTICE & INSTRUCTIONS: CIVIL § 103:01 (6th ed. 2011) (including, as a pattern jury instruction: "The law does not permit you to be controlled by sympathy, prejudice, or public opinion."). As the conduct of the appellees' counsel in this case was egregious, we conclude that the generic instruction did not sufficiently counter the prejudice.[9]

\* \* \* \*

Counsel has an obligation—as Justice Holmes put it—to "play the game according to the rules."[10] Here, the appellees'

---

[9] We fear that the denial of the District's mistrial motion in the jury's presence may have lessened the likelihood that the jury took seriously either the district court's curative instruction or its general jury instruction. We therefore suggest that it might have been better had it been done outside the jury's presence.

[10] I said to [Justice Holmes]: "Well, sir, goodbye. Do justice!" He turned quite sharply and . . . . replied: "That is not my job. My job is to play the game according to the rules."

Judge Learned Hand

counsel did not. She made four inappropriate arguments; three after the district court had sustained objections. As the district court's efforts to cure the resulting prejudice were, in our view, insufficient, we reverse and remand for further proceedings consistent with this opinion.

*So ordered.*

---

Michael Herz, *"Do Justice!": Variations Of A Thrice-told Tale*, 82 VA. L. REV. 111, 111 (1996) (quoting Learned Hand, *A Personal Confession*, *in* THE SPIRIT OF LIBERTY 302, 306-07 (Irving Dilliard ed., 3d ed. 1960)).